565 P.2d 1326

TOWN OF WICKENBURG, an Arizona Municipal Corporation, E. Curtis Arnett, Individually and as Mayor of the Town of Wickenburg, Julia Brooks, Garth Brown, Patricia Doom, Richard Hopfer, Fred Pisanelli, and Clifford Pollay, Jr., Individually and as Councilmen of the Town of Wickenburg, Appellants and Cross-Appellees,

v.

STATE of Arizona, a body politic, Appellee and Cross-Appellant.

No. 1 CA-CIV 3268.

Court of Appeals of Arizona, Division 1, Department A.

June 14, 1977.

Bruce E. Babbitt, Atty. Gen. by Andrew W. Bettwy and Patrick M. Murphy, Asst. Attys. Gen., Phoenix, for appellee and cross-appellant.

Gerald L. Diddy, Wickenburg, for appellants and cross-appellees.

OPINION

HAIRE, Judge.

This appeal arises from an action for a declaratory judgment that A.R.S. § 38–545 [1], which requires every incorporated city in Arizona to adopt standards of financial disclosure applicable to its public officers, is unconstitutional and invalid because it violates provisions of both the United States and Arizona constitutions. The suit was originally brought by the Town of Wickenburg in its own name. Later the Mayor and members of the Town Council were added as individual plaintiffs.

The trial court decided that A.R.S. § 38–545 was not violative of any rights protected by either the United States or the Arizona constitutions. Plaintiffs appealed, and the state has cross-appealed, urging that the Town of Wickenburg is without standing to question the constitutionality of a state statute, and that, as to the individual plaintiffs, no justiciable controversy is presented.

We find that, under the circumstances presented, the state is correct in its argument that neither the Town itself nor the

---

1. A.R.S. § 38–545 reads:

"Notwithstanding the provisions of any law, charter, or ordinance to the contrary, every incorporated city, town or county shall by ordinance, rule, resolution, or regulation adopt standards of financial disclosure consistent with the provisions of this chapter applicable to public officers."

individual plaintiffs can properly present the question of the constitutionality of A.R.S. § 38–545 for review. We therefore vacate the decision of the trial court on the constitutionality questions, and remand for entry of judgment dismissing the complaint.

## THE INDIVIDUAL PLAINTIFFS

The specific requirements of Arizona's Financial Disclosure statutes, A.R.S. §§ 38–541–544 are applicable to those holding state offices only, and do not apply to public officers serving cities and towns, such as the individual plaintiffs here. A.R.S. § 38–545 places a mandatory duty upon every incorporated city to enact a financial disclosure ordinance "consistent with" the financial disclosure provisions applicable to public officers of the state. At the time this lawsuit was brought, however, no ordinance had been adopted by the Town of Wickenburg.[2] The individual plaintiffs contend that the provision requiring that the town enact some ordinance offends their constitutional rights as individuals. The complaint alleged that a majority of the council members had submitted resignations effective in the future or had stated their intentions to resign "if forced to comply with A.R.S. § 38–545", and that adherence to its requirements would adversely affect the town in its operations.

■ Since the financial disclosure statutes do not in terms apply to these individual plaintiffs at all, the gist of the allegation of harm in this complaint seems to be that the threat of an ordinance offends plaintiffs' rights, in that no ordinance could be adopted under A.R.S. § 38–545 which would be "consistent with" A.R.S. §§ 38–541–544 and yet not infringe upon the plaintiffs' constitutional rights as individuals. But even giving the complaint this broad reading, we find the allegation of harm as presented here entirely too speculative and abstract to be ripe for judicial determination. When, and if, the town's ordinance is

properly before us for review, it will be possible to decide the questions of whether it is "consistent with" A.R.S. § 38–545 *et seq.*, and whether specific provisions infringe upon individual rights of any sort. As the Arizona Supreme Court observed in *Moore v. Bolin*, 70 Ariz. 354 at 358, 220 P.2d 850 at 852 (1950), when asked to declare a statute unconstitutional which allegedly restricted plaintiff's right to seek office:

> "It is the court's view that the facts pleaded by appellant do not show a present existing controversy which permits the court to adjudicate any present rights. The allegations merely show an intent to do certain things in the future all of which are dependent upon future events and contingencies within control of the appellant. There are many contingencies or events which might occur before the last day before appellant may file his petition, e. g., the appellant may decide not to become a candidate for office between now and the time for filing petitions and papers, or he might not secure the required number of signatures to his papers and petitions as to entitle him to file for the office of Governor."

The court found the question there not ripe for a declaratory judgment.

In the instant case, the Town may pass an ordinance with which plaintiffs may find they are able to comply without undue hardship. Every statute necessarily provokes some infringement of individual rights. It would be impossible for a court to balance the extent of such infringement against the public benefits to be derived without looking at specific provisions applicable to the individuals bringing suit.

To hold, as these individual plaintiffs urge, that no ordinance could possibly be passed which would be constitutional as applied to them would involve inquiry of an unmanageably broad and speculative nature. As this Court stated in *Planned Parenthood Center of Tucson, Inc. v. Marks*, 17 Ariz.App. 308 at 310, 497 P.2d 534 at 536 (1972):

---

2.  The briefs filed in this Court indicate that an ordinance was enacted subsequent to the entry of judgment.

"The remedial purpose of the declaratory judgments act has been adverted to in *Peterson v. Central Arizona Light & Power Co.*, 56 Ariz. 231, 107 P.2d 205 (1940) and *Podol v. Jacobs*, 65 Ariz. 50, 173 P.2d 758 (1946).

"But, even though the act is remedial and is to be liberally construed, it is well settled that a declaratory judgment must be based on an actual controversy which must be real and not theoretical. * * * To vest the court with jurisdiction to render a judgment in a declaratory judgment action, the complaint must set forth sufficient facts to establish that there is a justiciable controversy. * * * A 'justiciable controversy' arises where adverse claims are asserted upon present existing facts, which have ripened for judicial determination. * * * [Citations omitted].

■ Plaintiffs urge that the terminology of the declaratory judgment statute itself indicates that they stand in sufficient relationship to the controversy to bring the present action:

A.R.S. § 12–1832 reads:

"*Any person* interested under a deed, will, written contract or other writings constituting a contract, or *whose rights,* status or other legal relations *are affected by a statute,* municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." (Emphasis added).

But the statute speaks in the present tense; the rights must be presently affected. There was no ordinance with which these individual plaintiffs were being asked to comply at the time they attempted to bring this suit. While in some respects enlarging the concept of justiciable controversy, the declaratory judgment statute does require that a person bringing suit have sufficient concrete interests at stake that the court may answer the questions presented with respect to those interests. At the time they

attempted to bring this lawsuit, the individual plaintiffs had no rights presently affected. They were, therefore, not in sufficiently direct relationship with the allegedly offending statute to present this Court with an existing controversy capable of judicial resolution.

## THE TOWN OF WICKENBURG

Since no justiciable controversy was presented with respect to the individual plaintiffs, the next question we must consider is whether the Town of Wickenburg is itself an entity which may assert on its own behalf the constitutional questions raised. Wickenburg is a municipal corporation formed under the laws of the State of Arizona. In its amended complaint, the town alleged that:

"Arizona Revised Statute 38–545 violates the Constitution of the State of Arizona and the Constitution of the United States of America as applied to Plaintiffs and is illegal, unconstitutional and without force of law. Specifically, Plaintiffs challenge the constitutionality of ARS 38–545 on the following grounds: (1) that it is vague, denying Plaintiffs due process of law in violation of the United States Constitution Amendment XIV and Arizona Constitution Article 2 Section 4; (2) that it is overbroad and an unconstitutional invasion of right of privacy in violation of United States Constitution Amendments I, IV, V, IX and XIV, and Arizona Constitution Article 2, Section 3 and Section 8; and (3) that it unduly restricts the right to seek and hold office in violation of the First Amendment of the United States Constitution and the Fourteenth Amendment of the United States Constitution and Arizona Constitution Article 2 Section 3."

■ The United States Supreme Court has held that a municipality has no rights or privileges arising under the federal constitution which it may assert against the state which created it:

"A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities un-

der the Federal Constitution which it may invoke in opposition to the will of its creator." *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36 at 40, 53 S.Ct. 431 at 432, 77 L.Ed. 1015 (1933).

The early cases were those in which the municipality attempted to assert property rights, arising under either the due process clause or the contracts clause, against state action which impaired those rights. As explained in *City of Trenton v. State of New Jersey,* 262 U.S. 182 at 188, 43 S.Ct. 534 at 537, 67 L.Ed. 937 (1923):

"The power of the state, unrestrained by the contract clause or the Fourteenth Amendment, over the rights and property of cities held and used for 'governmental purposes' cannot be questioned. In *Hunter v. Pittsburgh,* 207 U.S. [161] 179, 28 S.Ct. 40, 52 L.Ed. 151, reference is made to the distinction between property owned by municipal corporations in their public and governmental capacity and that owned by them in their private or proprietary capacity, and decisions of this court which mention that distinction are referred to. *In none of these cases was any power, right, or property of a city or other political subdivision held to be protected by the Contract Clause or the Fourteenth Amendment. This court has never held that these subdivisions may invoke such restraints upon the power of the state.*" (Footnotes omitted). (Emphasis added).

A limitation on the broad proscription against allowing a political subdivision to assert rights in opposition to its creator was expressed in *City of Trenton, supra,* 262 U.S. at 187, 43 S.Ct. at 537:

"*In the absence of state constitutional provisions safeguarding it to them,* municipalities have no inherent right of self-government which is beyond the legislative control of the state. A municipality is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privi-

leges subject to the sovereign will." (Emphasis added).

■ The exception expressed is a logical one: municipalities may have rights directly granted to them under state constitutional provisions which they must be able to assert against a state statute which allegedly infringes upon those express rights. The right to bring suit to protect or enforce it, if necessary, should be inherent in the power granted. But the concept is limited to rights expressly granted to the municipality *as a municipality,* and does not allow the municipality to bring a lawsuit in court to protect personal rights guaranteed to its citizens as individuals.

In addition to the rationale above expressed that a municipality, being merely a creation of the state, can have only those rights expressly granted to it, *see City of Scottsdale v. Superior Court,* 103 Ariz. 204, 439 P.2d 290 (1968), the general reasons for denying the municipality standing to bring suit would seem to be two-fold: 1) As a creation of the state, the municipality would not be a proper party to invoke personal rights of its citizens against government interference as it must to a large extent share the interests of the state expressed in the allegedly infringing statute; and 2) As a general rule, one party cannot challenge the constitutionality of a statute by asserting that it offends the constitutional rights of another. Only one who is himself directly harmed by the allegedly infringing statute may invoke the power of the court and assert the protection of the constitutional provisions. *McKinley v. Reilly,* 96 Ariz. 176, 393 P.2d 268 (1964), appeal dismissed, 381 U.S. 276, 85 S.Ct. 1457, 14 L.Ed.2d 431.

In the case before us, all the constitutional protections invoked, both state and federal, are those specifically granted to individuals: violations are alleged of the individual plaintiffs' rights to seek and hold office under the first amendment of the federal constitution:

"AMENDMENT I.

"Congress shall make no law respecting an establishment of religion, or prohibit-

ing the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." There are also allegations that the statute infringes upon protections granted under the due process clause of the fourteenth amendment:

"AMENDMENT XIV.

"Section 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge *the privileges or immunities of citizens* of the United States; nor shall any State deprive *any person* of life, liberty, or property, without due process of law; *nor deny to any person* within its jurisdiction the equal protection of the laws." (Emphasis added).

The provisions of the Arizona constitution allegedly infringed are Art. 2, §§ 3, 4 and 8:

"§ 3. Supreme law of the land

Section 3. The Constitution of the United States is the supreme law of the land.

"§ 4. Due process of law

Section 4. *No person* shall be deprived of life, liberty, or property without due process of law.

\* \* \* \* \* \*

"§ 8. Right to privacy

Section 8. *No person* shall be disturbed in his private affairs, or his home invaded, without authority of law." (Emphasis added).

No claim is made that the municipality itself has either property or privacy rights which can be invaded by the statute in question. These particular constitutional provisions are specifically designed to safeguard the rights of *persons* against infringement by the government, *see Truax v. Corrigan,* 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375 (1921).

▮ There are no concomitant rights in the municipality, a governmental unit, to have its citizens free of governmental interference. As expressed in *City of Mountlake Terrace v. Wilson,* 15 Wash.App. 392, 549 P.2d 497 at 498 (1976) (a case denying standing to the city to challenge the constitutionality of a state statute under the due process clause):

"The due process clause protects people from government; it does not protect the state from itself. Municipal corporations are political subdivisions of the state, created for exercising such governmental powers of the state as may be entrusted to them and they may not assert the protection of the due process clause against action of the state government."

The case of *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) has been cited to us by the Town of Wickenburg as indicating a limitation of the principle, enunciated in the *City of Baltimore* and *City of Trenton* cases, *supra,* that a municipality has no rights under the federal constitution which it may assert against the state. *Gomillion v. Lightfoot* was a suit brought by individuals asking for a declaratory judgment that state legislation redefining boundaries of the City of Tuskegee so as to eliminate black residents from the city limits was a violation of the fourteenth amendment. The city, through its mayor, Mr. Lightfoot, responded that the power of the state to establish, destroy, or reorganize its political subdivisions was absolute. The United States Supreme Court rejected this proposal, holding that the state could not use its admitted power to set the boundaries of a municipality in such a way as purposefully to defeat the constitutional rights of its citizens. But the language cited to us:

"Legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution. . . . " 364 U.S. at 344, 345, 81 S.Ct. at 129, 5 L.Ed.2d at 115,

does not purport to give the municipality itself authority to contest allegedly unconstitutional enactments of the state. In *Gomillion v. Lightfoot* it was the citizens

individually who brought suit against the city, alleging that the action of the state infringed their own rights. Nowhere in *Gomillion* is it stated or implied that the municipality would be a proper party to assert the rights of its citizens against the state.[3]

*Wickenburg* has also cited to us cases which, it claims, demonstrate that it is the practice in Arizona to allow actions between governmental units, including allowing municipalities to bring actions against the state.

In *State Tax Commission v. Board of Supervisors of Yavapai County,* 43 Ariz. 156, 29 P.2d 733 (1934), the State Tax Commission attempted to mandamus the county board of supervisors to assess certain property. The Arizona Supreme Court allowed the county board of supervisors to argue that the statute which permitted the tax commission to require the new assessment infringed rights of property owners under the due process clauses of the Arizona and federal constitutions. The case does not stand as authority for the proposition that a political subdivision is a proper party to raise the constitutional claims of its residents against the state, however, as that question was not discussed. *City of Tempe v. Arizona Board of Regents,* 11 Ariz.App. 24, 461 P.2d 503 (1969) is also not valid authority for the proposition cited. In that case the City of Tempe had attempted to collect[4] a municipal tax from certain activities occurring on the campus of Arizona State University, located within that city. The holding of the case is that a political subdivision may not tax its sovereign without the express consent of that sovereign. The case cannot be considered in any way as authority allowing a municipality to assert that a state statute violates constitutional rights.

Finally, the Town of Wickenburg cites *Board of Regents of Universities and State*

*College v. City of Tempe,* 88 Ariz. 299, 356 P.2d 399 (1960), which was a successful action brought by the state to enjoin the city from interfering, through its admitted power to enforce building codes, with the university's construction program. Clearly this case also is not authority for allowing a municipality to initiate an action against the state for a declaratory judgment that a state statute infringes constitutional rights of its citizens.

■ The Town's last argument is that the definitional section concerning "persons" in the Declaratory Judgment Act expressly grants the Town standing.

A.R.S. § 12–1843 provides:

"The word 'person' wherever used in this article shall be construed to mean any person, partnership, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever."

This definitional section does not in terms grant standing to sue where it would otherwise be unavailable to the municipality, and we are reluctant to read a rule of construction as having so broad an effect.

■ The Town of Wickenburg attempts to bring this action in order to assert an interest in its own good government in opposition to the state's determination of the same issue. As a matter of policy, this seems to be exactly the kind of lawsuit which a municipality, as a creature of the state, should not be empowered to bring.

Reversed and remanded with directions to grant the motion of the state to dismiss the complaint.

NELSON, P. J., and DONOFRIO, J., concur.

---

3. It was the city, in fact, which was asserting in defense to the suit the absolute power of the state to control it.

4. Pursuant to A.R.S. § 9–491:

"A. A city or town may maintain in its name a civil action to recover an unpaid license, business or occupation tax imposed by an ordinance of the city or town against a person liable for the payment thereof."