928 P.2d 699

**MARICOPA COUNTY, a body politic, Plaintiff–Appellee,**

v.

**STATE of Arizona and Arizona Department of Revenue, Defendants–Appellants,**

**and**

**D'Wayne Sherwood and Marla Sherwood, husband and wife; D'Wayne Sherwood, as Trustee of the D'Wayne Sherwood Defined Benefit Plan; Robkeal Limited Partnership, an Arizona limited partnership; United Title Agency, Inc., an Arizona corporation, as successor in interest to USLIFE Title Co., as Trustee of USLIFE Title Co. Trust No. 1131 dated August 10, 1983; The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints, a Utah corporation sole; and Bentree Corp., a Delaware corporation, Intervenor Defendants–Appellants.**

No. 1 CA–TX 94–0012.

Court of Appeals of Arizona, Division 1, Department T.

July 11, 1996.

Review Denied Dec. 17, 1996.

Helm & Kyle, Ltd. by John D. Helm, Roberta S. Livesay, Phoenix, for Plaintiff–Appellee.

Grant Woods, Attorney General by Gale Garriott, Michael F. Kempner, Assistant Attorneys General, and Beus, Gilbert & Morrill, P.L.L.C. by K. Layne Morrill, Dalon J. Morgan, Phoenix, for Defendants–Appellants.

## OPINION

SULT, Judge.

The Arizona Department of Revenue and a number of taxpayers who intervened as par-

ties defendant [1] appeal from a tax court judgment declaring that 1993 Arizona Session Laws chapter 100, section 2 ("HB 2007") contravened article 9, section 7 of the Arizona Constitution ("the Gift Clause"). Appellants present these issues on appeal:

1. Whether appellee Maricopa County ("the county") has standing to challenge the constitutionality of HB 2007;

2. Whether the Gift Clause is applicable to HB 2007; and

3. If so, whether HB 2007 constitutes a gift of public funds in violation of the Gift Clause.

In its response brief, the county argues as additional grounds that HB 2007 also violates article 9, section 1 ("the Uniformity Clause"), and article 4, part 2, section 19 (prohibiting certain special legislation) of our constitution. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") § 12–2101(B) (1994).

## FACTUAL BACKGROUND

The facts and legislative events on which this litigation turns are not in dispute. In Arizona, property is divided into a number of classifications for *ad valorem* property tax purposes. A.R.S. § 42–162 (Supp.1995). Each class of property is assessed at a percentage of its "full cash value" as specified by A.R.S. § 42–227 (Supp.1995), which yields the property's "assessed valuation." The taxing authority then applies its tax rate to this valuation to calculate taxes due. A.R.S. §§ 42–201(1), 42–304, 42–309, 42–310 (1991).

"Full cash value" is generally synonymous with market value. It is

... that estimate of value that is derived annually by the use of standard appraisal methods and techniques.

A.R.S. § 42–201(4). Property used for agricultural purposes, however, is not valued at true market value. Rather, a special statutory valuation methodology applies:

... Land used for agricultural purposes shall be valued using solely the income approach to value without any allowance for urban or market influences. The income of the property shall be determined using the capitalized average annual net cash rental for such property.

A.R.S. § 42–141(A)(5) (Supp.1995). The parties agree that, at least as to property located in or near urban areas, parcels that qualify for valuation as agricultural are generally valued at far less than nonagricultural parcels. This in turn produces a significantly lower tax bill for agricultural parcels than would otherwise be the case.

For tax years through and including 1989, county assessors valued property used for agricultural purposes under the methodology set forth in § 42–141(A)(5). Effective in September 1989, however, the legislature conditioned the continued availability of that methodology on: (1) the agricultural property owner's filing, by September 15 every five years, a "completed agricultural use application"; (2) the county assessor's approval of that application by the following January 1; and (3) the owner's certifying in writing by September 16 in each non-application year that the information on the application was still correct. A.R.S. § 42–167(C)–(F) (1989).[2] The concluding sentence of section 42–167(C) provided: "If the owner of the property does not file an application or certification form as prescribed in this subsection on or before September 16, the property shall not be classified as being used for agricultural purposes for the next tax year."

In April 1991, DOR instituted a procedure whereby a taxpayer who failed to comply with the application/certification requirements could nevertheless avoid the sanction of section 42–167(C) by appealing the assignment of a nonagricultural valuation. If the property otherwise qualified as agricultural, it could then receive an agricultural valuation. In the same year, the legislature vali-

---

1. The Arizona Department of Revenue and intervenors have identical interests in this litigation and filed a joint opening and reply brief in this appeal. We will refer to them as "DOR" or "intervenors" where necessary, otherwise they will be referred to collectively as "appellants."

2. In 1994, the legislature eliminated the annual certification requirement and substituted a requirement that the assessor be . notified within sixty days of any changes in the use of the land. 1994 Ariz. Sess. Laws, ch. 100, § 1.

dated this procedure by adopting an amendment to the same effect.[3] Two years later, apparently in an attempt to provide for taxpayers who had missed both the certification and appeal deadlines, the legislature passed HB 2007. Section 2 of this bill, the provision at issue in this appeal, adopted an uncodified revaluation and refund mechanism that became effective immediately on its approval by the Governor on April 14, 1993.[4]

The full text of section 2 is set forth in the margin.[5] In summary, it permitted any person who owned property used for agricultural purposes, but who received a nonagricultural valuation in any tax year because he had failed to file the annual certification required by section 42–167(D), to file the omitted certification on or before February 15, 1994. If the county assessor found that the property qualified as agricultural under section 42–167(A), the assessor was to revalue the property for the tax year in question and give the owner a certificate of revaluation. On presentation of this certificate, the county treasurer was either to refund any excess taxes previously paid or forgive any unpaid excess taxes for that year, together with any interest and penalties accrued with respect to the excess taxes.

## PROCEDURAL BACKGROUND

Maricopa County brought this declaratory judgment action against DOR on July 19, 1993. Its amended complaint challenged the constitutionality of HB 2007 on two grounds. Count I alleged that HB 2007 impermissibly gave public funds for the benefit of private persons and therefore violated the Gift Clause. Count II alleged that HB 2007 permitted taxpayers to obtain retroactive refunds of taxes which had been assessed and collected legally, thereby violating the Arizona Due Process Clause. Ariz. Const. art. 2, § 4. Although DOR's initial answer asserted as a defense that the county lacked standing to challenge the constitutionality of HB 2007, its amended answer omitted that defense.

The county and DOR filed cross-motions for summary judgment. During the briefing of these motions, intervenors moved to intervene as defendants and the tax court allowed them to do so.[6] Their answer in intervention

---

**3.** The amendment changed subsection (C) to subsection (D) and appended the following language to the end of subsection (D): "The owner may appeal the classification as prescribed in § 42–221 whether or not the owner filed an application or certification form."

**4.** Section 3 of this bill repealed section 2 from and after April 1, 1994.

**5.** Filing omitted annual certification of agricultural use; refund

    A. A person who owns property used for agricultural purposes that meets the criteria prescribed by section 42–167, subsection A, Arizona Revised Statutes, but who failed to file the annual certification of eligibility for any year as required by section 42–167, subsection D, Arizona Revised Statutes, may file the certification for that year with the county assessor on or before February 15, 1994.

    B. If the property owner submits a complete, correct and timely certification under subsection A of this section, together with a sworn statement, under penalty of perjury, that the information contained in the certification is true according to the owner's best belief and knowledge, and if the assessor is satisfied that the property meets the requirements prescribed by section 42–167, subsection A, Arizona Revised Statutes, for the year in question, the assessor shall:

    1. Reclassify the property as class four under section 42–162, Arizona Revised Statutes, for the year in question.

    2. Redetermine the valuation of the property for the tax year in question pursuant to section 42–167, Arizona Revised Statutes.

    3. Issue a certificate of revaluation to the property owner.

    C. The owner shall submit the certificate of revaluation to the county treasurer. If taxes have already been paid by the current owner with respect to the property for the tax year in question, and if the person submits proof that the person has paid the taxes for the tax year for which reclassification is sought, the county treasurer shall refund the excess taxes paid after receiving the certificate. The county treasurer is entitled to credit for the refund in the next account period with the state and each political subdivision to which the tax monies may have been transmitted. If taxes have not been paid with respect to the property for the tax year in question, the county treasurer shall forgive and strike off from the tax roll the excess amount of taxes together with any interest and penalties accruing to the excess amount.

**6.** Each intervenor owned real property in Maricopa County during 1990 through 1992 that was used for agricultural purposes. Each failed to file with the Maricopa County Assessor the agri-

included a denial of the county's allegations and affirmatively alleged that the county lacked standing to challenge the constitutionality of HB 2007.

Intervenors filed a separate motion for summary judgment against the county. Their motion was directed at the due process question and did not argue the standing issue. This issue was accordingly never briefed before the tax court by any of the parties.

The tax court initially ruled for the county on both the Gift Clause and Due Process Clause issues. On DOR's motion for reconsideration, however, the tax court filed a revised opinion affirming its holding that HB 2007 violated the Gift Clause but rejecting the due process contention. From final judgment in accordance with the tax court's opinion, DOR and intervenors timely appealed. The trial court's rulings regarding the due process issue have not been raised in this appeal.

## ANALYSIS

### The Standing Issue

■ Notwithstanding that they had apparently abandoned the issue in the court below, appellants in their brief on appeal again raised the question whether the county can sue the State of Arizona to challenge the constitutionality of a state statute. *See Town of Wickenburg v. State*, 115 Ariz. 465, 469, 565 P.2d 1326 (App.1977). At oral argument, however, appellants informed this court that they no longer challenged the county's standing and indicated that they wished us to address and decide the substantive issues. Since standing is not a constitutional mandate in Arizona, *see Matter of Strobel*, 149 Ariz. 213, 216, 717 P.2d 892, 895 (1986), we accede to appellants' abandonment of this issue and proceed to the merits.[7]

## HB 2007 and the Gift Clause

■ The Gift Clause provides:

Neither the state, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or become a joint owner with any person, company or corporation, except as to such ownerships as may accrue to the State by operation or provision of law.

The purpose of this provision is to prevent governmental bodies from depleting the public treasury by giving advantages to special interests or engaging in non-public enterprises. *Kromko v. Arizona Bd. of Regents*, 149 Ariz. 319, 320–21, 718 P.2d 478, 479–80 (1986); *Wistuber v. Paradise Valley Unified School Dist.*, 141 Ariz. 346, 349, 687 P.2d 354, 357 (1984); *Arizona Center for Law v. Hassell*, 172 Ariz. 356, 367, 837 P.2d 158, 169 (App.1991).

■ In *Wistuber*, the supreme court established the rule that a use of public money or property will not violate the Gift Clause if, taking a "panoptic" view of the transaction in question, a court concludes that (1) the use is for a public purpose, and (2) the value of the public money or property is not so much greater than the value of the benefit received by the public that the exchange of the one for

cultural certification forms required by § 42–167(D) for some or all of those years. Each was made eligible by section 2 of HB 2007 to regain an agricultural valuation of their property for the years 1990 through 1992 and receive either a tax refund or forgiveness.

7. Judicial economy and minimizing expenditure of both public and individual funds in pursuing this litigation support accepting appellants' abandonment of the standing issue. As we were informed at oral argument, if the county were found to lack standing, the county would simply substitute individual taxpayers as plaintiffs. A taxpayer has standing to challenge the validity of a state taxing statute in a declaratory judgment action based on his liability to replenish the deficiency caused by the statute's operation. *See Henderson v. McCormick*, 70 Ariz. 19, 215 P.2d 608 (1950) (to challenge a municipal transaction not involving direct expenditure of municipal funds, taxpayer must show pecuniary loss to taxpayers as a class); *Ethington v. Wright*, 66 Ariz. 382, 189 P.2d 209 (1948) (municipal taxpayers had standing to sue to enjoin illegal expenditure of municipal funds). We do not doubt that the county could find willing plaintiffs among the hundreds of thousands of owners of property valued in a nonagricultural classification.

the other is disproportionate. 141 Ariz. at 349, 687 P.2d at 357. *See Arizona Center,* 172 Ariz. at 367, 837 P.2d at 169 (applying the *Wistuber* rule to receipt of consideration by the dispensing public entity). A use of public funds or property that meets both these criteria will not contravene the Gift Clause even though particular persons or organizations benefit specially from such use. *See Industrial Dev. Auth. of Pinal County v. Nelson,* 109 Ariz. 368, 373, 509 P.2d 705, 710 (1973).

■ Appellants first contend that the Gift Clause does not apply to HB 2007 because it *does not implicate the Clause's purpose of* preventing the depletion of the public treasury by giving advantages to special interests. Appellants reason that allowing taxpayers to obtain refunds of excess taxes paid for previous years does not constitute making a gift of public funds where the excess payments resulted from the taxpayers' failure to comply with a "procedural" requirement that the legislature could as easily have chosen not to· impose. They assert that if the Gift Clause applies here, then there is nothing to prevent it from applying as well to *special valuation methods, property tax clas-sifications,* and other uses of tax policy to further economic or social purposes.

The flaw in appellants' reasoning is that it draws no distinction between legislative measures that result in tax benefits that take effect prospectively and those that annul closed taxing transactions in order to confer tax benefits retroactively. In the first category, the taxing entity forgoes revenues that it could have chosen to collect in the future by changing its laws prospectively so the taxpayers' obligation to pay never arises. In the second category, however, the taxing entity modifies its laws to impose on itself an obligation to refund revenues that it collected lawfully in the past. The operation of HB 2007 falls into the second category and thus constitutes a transaction that implicates the Gift Clause. *Cf. Rowlands v. State Loan Bd. of Arizona,* 24 Ariz. 116, 207 P. 359 (1922) (invalidating statute forgiving interest due on state-owned mortgages).

■ Appellants next contend that if the Gift Clause is implicated, HB 2007 does not violate it. They assert that HB 2007 protects Arizona's agriculture industry because it "prevents the loss of land from the farmers' inability to pay higher taxes and thereby protects the revenue, employment, and commodities derived from that land." They also assert that HB 2007 enables farmers who cannot pay the higher tax rates to return to the tax rolls and at least pay something. They point out that the Senate Finance Committee determined that much of HB 2007's cost would be offset by owners who could begin paying taxes again under the proper rates. They argue that these public benefits provide adequate consideration for the private benefit conferred by HB 2007, and that in any event the benefit is supported by a moral obligation of the taxing entity not to keep excess taxes to which it was not entitled as a matter of substance.

In response, the county first argues that HB 2007 itself sets forth no public purpose. The county also asserts that the record contains no evidence of a public purpose, such as "that any farmers are about to lose their land from inability to pay taxes associated with a failure to file the certification form." It further asserts that the public would lose nothing if a farmer, who was forced to sell his farm, sold it to someone who continued farming.· In fact, the county argues, the public record reflects that all intervenors have actually paid their taxes on Maricopa County parcels and thus are in no danger of losing their ability to farm. Therefore, the county concludes, HB 2007 fails both the "public purpose" prong of the *Wistuber* test as well as its "disproportionality" prong.

Our supreme court has said that "the term 'public purpose' is incapable of exact definition and changes to meet new developments and conditions of times. . . ." *City of Glendale v. White,* 67 Ariz. 231, 236, 194 P.2d 435, 438 (1948). To ascertain "purpose," we must employ the *Wistuber* court's panoptic view; that is, we must look at all the pertinent circumstances before coming to a conclusion. Using this approach, it is apparent that the purpose of HB 2007 can be discerned only in the context of the statute to which it is connected, namely section 42–141(A)(5), which provides the favorable agricultural val-

uation methodology for farmland abutting an urban area. This latter statute reflects a legislative policy decision designed to address the encroachment of urban expansion into traditional farming areas, the public benefit of which decision the county has not challenged here. We need no citation from the record to recognize that such expansion creates rising land values which in turn increase tax bills out of proportion to the economic results attainable through farming. We have no doubt that the legislature's action represented by section 42–141(A)(5) was in response to changing demographic conditions and was within its power to enact. *See Apache County v. Atchison, Topeka & Santa Fe Ry. Co.*, 106 Ariz. 356, 476 P.2d 657 (1970), *appeal dismissed*, 401 U.S. 1005, 91 S.Ct. 1257, 28 L.Ed.2d 542 (1971) (legislature's classification scheme for assessing property for taxation purposes did not violate state or federal constitution). We therefore conclude that section 42–141(A)(5) furthers a valid public purpose.

HB 2007 is simply an extension of section 42–141(A)(5), designed to further the policy of that statute and aid in its implementation. Its function can be compared to the activity of the teacher in *Wistuber*. There the supreme court found that a school district's use of tax money to pay a portion of the teacher's salary, even though the teacher was working full time as president of the teacher's association, accomplished a public purpose since the teacher's activity aided the school district in performing its obligations. *Id.* at 348, 687 P.2d at 356. Here, HB 2007 aids the legislature and DOR in carrying out the aims of section 42–141(A)(5) and, as such, carries the same public purpose imprimatur as its forebear.

■ The county's arguments are also directed at the second *Wistuber* prong, whether the exchange of tax money for the public benefit is disproportionate. *Wistuber* treats this inquiry as a question of fact and places the burden of demonstrating disproportionality on *the party who is challenging the statute.* 141 Ariz. at 349–50, 687 P.2d at 357–58. ("We will not assume disproportionality of consideration.") Indeed, the *Wistuber* court affirmed the trial court's judgment sustaining

the transaction challenged therein specifically because the plaintiffs "did not carry their burden and it is doubtful that they could have proved any serious disproportion in consideration." *Id.* at 350, 687 P.2d at 358.

The county's suppositions regarding the lack of public benefit in HB 2007 may sound plausible, but the record contains absolutely nothing to support them. Such unsupported assertions are insufficient to satisfy the county's burden of proof on this question of fact. Equally important, the tax court was wrong when it allocated the burden of proof to appellants here by finding that "the Department and the Intervenors have not provided this Court with any showing that the public, not just a small group of the community, benefits from Section 2." 178 Ariz. at 144, 871 P.2d at 265 (emphasis deleted). The county's failure to present any evidence below coupled with the tax court's misallocation of the burden of proof resulted in clear error.

### Special Legislation/Uniformity Clause

■ For the first time on appeal, the county has raised two additional challenges under the Arizona Constitution to HB 2007. The county charges that the bill is a special law pertaining to the assessment and collection of taxes in violation of article 4, Part 2, section 19(9). It also argues that the bill violates article 9, section 1 which provides that "[a]ll taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax."

■ An appellate court will generally not consider an issue on appeal that was not first presented to the trial court for resolution. *See Schoenfelder v. Arizona Bank*, 165 Ariz. 79, 88, 796 P.2d 881, 890 (1990); *Lansford v. Harris*, 174 Ariz. 413, 419, 850 P.2d 126, 132 (App.1992). This rule is procedural rather than jurisdictional, *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503, 733 P.2d 1073, 1086, *cert. denied*, 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987), and in certain instances we will exercise our discretion to consider such an issue. *See Aldrich and Steinberger v. Martin*, 172 Ariz. 445, 447–48, 837 P.2d 1180, 1182–83 (App.1992).

282

Appellants point out that the county, in raising these issues for the first time on appeal, offered no explanation why they were not presented to the court below. Moreover, the county has made no effort here to inform this court why we should exercise our discretion to decide these issues. We are unable to discern any justification and therefore decline to consider these additional challenges to HB 2007.

## CONCLUSION

Our review of the record discloses that the county failed to sustain its burden that HB 2007 violates the Gift Clause. We therefore vacate the opinion of the tax court and remand this matter with directions to enter judgment for appellants.

LANKFORD, Acting P.J., and KLEINSCHMIDT, J., concur.