978 P.2d 119

**Carol LARSEN, Individually and as Guardian and Conservator of Kimberly Griesmer, an Incapacitated Adult, Plaintiff/Appellant,**

v.

**NISSAN MOTOR CORPORATION IN U.S.A., a California Corporation; Nissan Motor Company Ltd., a Japanese Company; and Jim Click Nissan, Inc., a California Corporation, Defendants/Appellees.**

No. 2 CA–CV 97–0181.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 2, 1998.

Review Denied May 25, 1999.

---

The Law Office of Frank L. Branson, P.C. By Frank L. Branson, Jerry M. White, Robert D. Crain and William B. Curtis, Dallas, Texas, and Mendelsohn, Oseran & Eisner, P.C. By Richard S. Oseran, Tucson and Meehan & Associates By Michael J. Meehan, Tucson, for Appellants.

Bowman and Brooke, LLP By Jeffrey R. Brooke, Thomas M. Klein, and William F. Auther, Phoenix, for Appellees.

## OPINION

PELANDER, Presiding Judge.

¶ 1 In this personal injury action arising out of a one-vehicle rollover accident, plaintiff/appellant Carol Larsen appeals from a judgment entered on a jury verdict in her favor finding damages in the total amount of $6,050,000, but determining that defendants/appellees (collectively referred to as "Nissan") were only eight percent at fault. The primary issues on appeal are whether this court correctly interpreted A.R.S. § 12–2506 in *Zuern v. Ford Motor Co.*, 188 Ariz. 486, 937 P.2d 676 (App.1996), and whether Arizona's system of assessing liability for damages based on the trier of facts' allocation of fault under § 12–2506 violates article 2, § 31 of the Arizona Constitution. We reaffirm *Zuern*, conclude that the statute is constitutional, and therefore affirm.[1]

## BACKGROUND

¶ 2 We view the evidence in the light most favorable to upholding the jury verdict. *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 961 P.2d 449 (1998). The underlying facts relating to the accident are basically undisputed and uncomplicated. At the time of the accident, plaintiff's daughter/ward, Kimberly Griesmer, was a fully restrained front-seat passenger in a 1990 Nissan Pathfinder owned and driven by her employer, Sharad Pandhi, D.D.S. En route to Tucson after working in Cochise County, Pandhi was driving approximately 70 mph on State Route 666, a two-lane road with a 55 mph speed limit. At the time, Griesmer was acting within the course and scope of her employment as a dental technician for Pandhi.

¶ 3 Pandhi, possibly after having fallen asleep at the wheel, lost control of the vehicle as Griesmer slept. Both right wheels left the right side of the pavement, prompting Pandhi to rapidly steer to his left and then back to the right when the vehicle reached the roadway's left shoulder. The vehicle went off the left side of the road and rolled over five and one-half times. Plaintiff presented evidence, albeit disputed, that the vehicle's roof header and A-pillar above Griesmer's head collapsed inward onto her skull during the rollover, causing permanent and totally disabling closed head injuries.

¶ 4 Griesmer's mother/conservator, plaintiff Carol Larsen, filed this action against Nissan, alleging negligent design and strict product liability for design and manufacturing defects. Plaintiff did not name Pandhi as a defendant because, as Griesmer's employer, he was immune from liability pursuant to A.R.S. § 23–906(A). Nissan, however, named Pandhi as a nonparty at fault pursuant to A.R.S. § 12–2506(B) and Rule 26(b)(5), Ariz. R. Civ. P., 16 A.R.S. After a lengthy trial, the jury returned a verdict in plaintiff's favor but allocated 92 percent of the fault to Pandhi and the remaining eight percent to Nissan. This appeal followed the trial court's entry of judgment on the verdict.

## DISCUSSION

### A. Application of A.R.S. § 12–2506

¶ 5 Under the Uniform Contribution Among Tortfeasors Act (UCATA), A.R.S. §§ 12–2501 to 12–2509, "each tortfeasor in a personal injury action is liable only for his or her share of fault." *Sanchez v. City of Tucson*, 191 Ariz. 128, 133, 953 P.2d 168, 173 (1998), *citing* A.R.S. § 12–2506(A). *See also Hutcherson*; *Jimenez v. Sears, Roe-*

---

1. In a separate memorandum decision, we also reject plaintiff's alternative assertions that she is entitled to a new trial because of Nissan's disclosure violations and the trial court's alleged erroneous evidentiary rulings. The issues addressed in that decision do not warrant publication. *See* Rule 28(g), Ariz. R. Civ.App. P., 17B A.R.S.; *Fenn v. Fenn*, 174 Ariz. 84, 847 P.2d 129 (App. 1993).

*buck and Co.*, 183 Ariz. 399, 404, 904 P.2d 861, 866 (1995) ("We have recognized that the general goal of the present version of UCATA is to make each tortfeasor responsible for *only* its share of fault.") (emphasis in original). Under the statutory scheme, a defendant "can name nonparties at fault and have the trier of fact apportion liability among them, thus reducing the amount recoverable from the [defendant]." *Sanchez*, 191 Ariz. at 133, 953 P.2d at 173. In addition, a defendant can name a nonparty at fault even if the plaintiff is prohibited from directly suing or recovering from the nonparty. *See Dietz v. General Elec. Co.*, 169 Ariz. 505, 821 P.2d 166 (1991) (joint tortfeasor may require employer's negligence to be considered for assessment of fault under A.R.S. § 12-2506 when employer negligently contributes to employee's injury); *Ocotillo West Joint Venture v. Superior Court*, 173 Ariz. 486, 844 P.2d 653 (App.1992); *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 842 P.2d 1355 (App.1992).

¶ 6 Based on the applicable case law, plaintiff apparently concedes that A.R.S. § 12-2506 "establish[es] a system of several liability making each tortfeasor responsible for paying for his or her percentage of fault *and no more.*" *Dietz*, 169 Ariz. at 510, 821 P.2d at 171 (emphasis in original). She contends, however, that allocating "fault" pursuant to § 12-2506 differs significantly from apportioning damages "caused" by two or more tortfeasors, and that "UCATA should be construed to require" the latter. As plaintiff acknowledges, this court squarely addressed and rejected that argument in *Zuern*. In that case, we upheld a jury verdict that had allocated 70 percent of the fault to a nonparty driver, thereby limiting the defendant/manufacturer's damage liability to 30 percent of the total damage award. Unlike the appellants in *Zuern*, plaintiff here does not argue that the trial court erroneously admitted evidence of the nonparty driver's (Pandhi's) fault. She concedes such evidence "was admissible to determine who was liable," but maintains "[i]t should not have been · misusable, to determine damages." Thus,

plaintiff contends, allocation of fault, an issue on which all evidence of the nonparty driver's negligence was relevant and admissible, only should pertain to and control "who is liable," not the assessment of "who owes what" for damages.

¶ 7 Similar to plaintiff's argument here, the appellants in *Zuern* contended that "the only relevant consideration bearing on fault was the extent to which [plaintiff's] injuries were caused by the design of the [vehicle] and the extent to which they were caused by the foreseeable collision." Id. at 490, 937 P.2d at 680. Rejecting that argument, this court stated:

> We disagree with plaintiffs' contention that the comparative fault issue should have been limited to "the extent to which the collision or defects in the [vehicle] caused or contributed to [plaintiff's] injuries or damages." Section 12-2506(C) requires the trier to assess "degrees of fault," not just degrees of causation. Although causation (or physical contribution to the injury) is a necessary condition precedent to consideration of a person's fault—i.e., the fault must have "proximately caus[ed] or contribut[ed]" to the claimant's injuries to be considered, A.R.S. § 12-2506(F)(2)—once causation is found the trier of fact must determine and apportion "the relative degrees of fault" of all parties and nonparties. § 12-2506(C).

*Id.* at 491–92, 937 P.2d at 681–82.

¶ 8 Plaintiff urges us to reexamine *Zuern* which, she asserts, should be overruled or modified. We decline to do so for two reasons. First, we believe the holding in *Zuern* is consistent with, and indeed required by, the clear language of § 12-2506.[2] Second, in *Piner v. Superior Court*, 192 Ariz. 182, 962 P.2d 909 (1998), our supreme court implicitly approved *Zuern*. At issue in *Piner* was the continued viability of the "indivisible injury" rule of *Holtz v. Holder*, 101 Ariz. 247, 418 P.2d 584 (1966). Under that two-part rule, (1) "when the injury was indivisible, even though caused by successive accidents, the

---

**2.** The Arizona Supreme Court dismissed a petition for review as having been improvidently granted in *Zuern,* and also denied a motion to

depublish this court's opinion. *Zuern v. Ford Motor Co.*, 190 Ariz. 574, 951 P.2d 449 (1997).

plaintiff could assert a claim against all wrongdoers without having the burden of 'proving the extent of damage or injury caused by each. . . . ,' " *Piner,* 192 Ariz. at 186, 962 P.2d at 913, ¶ 18, *quoting Holtz,* 101 Ariz. at 250, 418 P.2d at 587, and (2) "damages were not to be apportioned on the basis of fault." *Piner,* 192 Ariz. at 187, 962 P.2d at 914, ¶ 19.

¶ 9   Addressing the impact of UCATA on *Holtz,* the court in *Piner* concluded that "the present version of UCATA has left intact the rule of indivisible injury, relieving the plaintiff of apportioning damage according to causal contribution." 192 Ariz. at 188, 962 P.2d at 915, ¶ 26.  The court then stated:

> The second part of the *Holtz* rule, however, was abrogated by § 12–2506(A). Contrary to the common law and cases such as *Gehres* [v. *City of Phoenix,* 156 Ariz. 484, 753 P.2d 174 (App.1987)], the *fault* of all actors is compared and each defendant is severally liable for damages allocated "in direct proportion to that defendant's percentage of fault." § 12–2506(A).   To determine each defendant's liability "the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault, and that amount is the maximum recoverable against the defendant." *Id.*

> Thus in an indivisible injury case, the factfinder is to compute the total amount of damage sustained by the plaintiff and the percentage of *fault* of each tortfeasor. Multiplying the first figure by the second gives the maximum recoverable against each tortfeasor.  This result conforms not only with the intent of the legislature and the text of the statute but also with common sense.  When damages cannot be apportioned between multiple tortfeasors, there is no reason why those whose conduct produced successive but indivisible injuries should be treated differently from those whose independent conduct caused injury in a single accident. . . .

192 Ariz. at 189, 962 P.2d at 916, ¶¶ 26, 27 (emphasis in original).  Thus, as in cases like this and Zuern, where "there has been a chain of cause and effect that produces injury in a single accident," 192 Ariz. at 190, 962 P.2d at 917, ¶ 31, our supreme court has now adopted a rule for indivisible injury cases under which damage awards are based on allocation of percentages of fault.

¶ 10   In addition to the controlling precedent against her, plaintiff's focus on causation as the sole determinant of responsibility for damages is misplaced because the causation element is factored in as "a necessary condition precedent to consideration of a person's fault" under a comparative fault system like Arizona's.  *See Zuern,* 188 Ariz. at 492, 937 P.2d at 682, and authorities cited therein;  A.R.S.  § 12–2506(F)(2) (" 'Fault' means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery . . . .");   Revised Arizona Jury Instructions (Civil) (3d ed.1997), Fault Instructions, Introduction, at 31 ("[U]nder UCATA, as amended, 'fault' is an actionable wrong, plus causation.").   As a leading treatise states:

> There is some debate over what is to be compared under comparative negligence, negligence or causation.  The problem in certain respects is one of terminology. Causation in fact is an absolute concept, which by its nature is incapable of being divided into comparative degrees—it either exists or it does not.  The adoption of comparative negligence, therefore, should not affect this preliminary determination.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 67 at 474 (5th ed.1984).  Thus, apportionment of causation would be difficult if not impossible.  In contrast, there is "no doubt that jurors are capable of evaluating degrees of fault, and the statute reflects our legislature's agreement." *Hutcherson,* 192 Ariz. at 55, 961 P.2d at 453.   In sum, we cannot accept plaintiff's construction of § 12–2506.

**B.   Constitutionality**

¶ 11   Plaintiff also argues that the statute violates article 2, § 31 of the Arizona Constitution, which provides: "No law shall be enacted in this State limiting the amount of damages to be recovered for causing the

death or injury of any person." Emphasizing the word "causing" in that section, plaintiff contends § 12–2506 is unconstitutional because it requires that damages be assessed strictly on allocation of fault. According to plaintiff, "damages must be apportioned by cause and not fault" in order to comply with article 2, § 31. We disagree.

¶ 12 We first note, and plaintiff acknowledges, that the constitutional issue "was not discussed by the parties before the trial court." Nor did plaintiff request a jury instruction or form of verdict calling for assessment of damages based on apportionment of causation rather than allocation of fault, ostensibly because of *Zuern*. Although appellate courts generally do not consider issues not raised in the trial court, that rule is procedural rather than jurisdictional. *See Cutter Aviation, Inc. v. Arizona Dep't of Revenue*, 191 Ariz. 485, 958 P.2d 1 (App. 1997); *Maricopa County v. State*, 187 Ariz. 275, 928 P.2d 699 (App.1996). A constitutional issue may be raised and addressed for the first time on appeal, particularly when, as here, the issue is of statewide importance, is raised in the context of a fully developed record, does not turn on resolution of disputed facts, and has been fully briefed by the parties. *Jimenez; Gosewisch v. American Honda Motor Co.*, 153 Ariz. 400, 737 P.2d 376 (1987); *Cutter Aviation.*[3]

¶ 13 As we recently recognized: "Statutes are presumed to be constitutional, and the party asserting that a statute is unconstitutional has the burden of clearly demonstrating that it is. If possible, we construe a statute so as to avoid rendering it unconstitutional, resolving any doubts in favor of its constitutionality." *Ramirez v. Health Partners of Southern Arizona*, 272 Ariz. Adv. Rep. 27, 30 at ¶ 20, 193 Ariz. 325, 330, 972 P.2d 658, 663 (Ct.App.1998) (citations omitted). Our supreme court has stated that the prohibition of article 2, § 31 "represents a 'fundamental guarant[y] to the people of Arizona,' intended 'to have broad sweep to protect all injured persons.'" *Smith v. Myers*, 181 Ariz. 11, 14, 887 P.2d 541, 544 (1994), *quoting Kenyon v. Hammer*, 142 Ariz. 69, 80 n. 9, 688 P.2d 961, 972 n. 9 (1984).[4] The court also has stated, however, that article 2, § 31 "has never been considered a guarantee of a particular amount of recovery," and "our constitution permits regulations effectively reducing a plaintiff's recovery." *Jimenez*, 183 Ariz. at 407, 904 P.2d at 869 (holding that neither the change in the misuse statute, making misuse of a product a comparative rather than absolute defense under A.R.S. §§ 12–2505(A) and 12–2506(F)(2), nor the abolition of joint and several liability under § 12–2506, violates article 2, § 31).[5]

3. We also question plaintiff's standing to raise the constitutional issue, inasmuch as her recovery of damages arguably was limited, if at all, by Arizona's constitutionally-based workers' compensation scheme and by Nissan's ability to name Griesmer's employer as a nonparty at fault. Because standing is not a constitutional jurisdictional requirement in Arizona and Nissan waived the issue by not raising it on appeal, we consider plaintiff's constitutional argument on the merits. *See State v. B Bar Enterprises, Inc.*, 133 Ariz. 99, 649 P.2d 978 (1982).

4. In *Smith*, the court held that "Arizona's periodic payment scheme [under A.R.S. §§ 12–581 to 12–594, applicable only to medical malpractice cases] is effectively a damage limitation prohibited by Ariz. Const. art. 2, § 31." 181 Ariz. at 18, 887 P.2d at 548. The statutes at issue in *Smith* limited how and when medical malpractice victims could be paid for certain damage items that a defendant was liable for and owed. For example, one of the statutes, § 12–586(C), permitted a medical malpractice defendant to elect to pay damage awards for future projected medical ex-

penses and lost earnings in periodic future installments rather than as part of a lump sum, total payment in satisfaction of the judgment. Under another statute, § 12–590, future payments on the judgment could cease if the medical malpractice victim were to die earlier than the jury predicted. Here, in contrast, Nissan owed the full amount of damages assessed against it in proportion to the percentage of fault the jury allocated to it. *Smith* bears no resemblance to this case and does not suggest that § 12–2506 is unconstitutional.

5. Plaintiff asserts that the dichotomy between legislative "regulation" and "abrogation," discussed extensively in cases that have analyzed article 18, § 6 of the constitution, "is neither required nor helpful here." *See, e.g., Jimenez; Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993); *Boswell v. Phoenix Newspapers*, 152 Ariz. 9, 730 P.2d 186 (1986). Both constitutional provisions, however, "must be read together and are intended to accomplish the same result." *Jimenez*, 183 Ariz. at 407 n. 10, 904 P.2d at 869 n. 10. *See also Kenyon*, 142

¶ 14 As construed by our supreme court, article 2, § 31 precludes the legislature from imposing "an absolute prohibition against suing" another or "limit[ing] recovery to [an] amount provided by the Legislature." *Kilpatrick v. Superior Court*, 105 Ariz. 413, 420, 466 P.2d 18, 25 (1970) (holding that, under former worker's compensation statutes, employee had right of action against fellow employee for injuries sustained in course of employment). *See also Halenar v. Superior Court*, 109 Ariz. 27, 29, 504 P.2d 928, 930 (1972) ("[I]f the right to sue is granted, by § 31 of Article 2 the legislature cannot place a limitation upon the recovery such as is found in the Workmen's Compensation Act."); *cf. Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977) (statutory abolition of collateral source evidentiary rule for medical malpractice cases does not violate article 2, § 31). In our view, A.R.S. § 12–2506 does not violate those principles. It neither prevents bringing an action nor limits recovery against any particular defendant, and does not prescribe damage ranges or caps for any causes of action.[6]

¶ 15 Although our supreme court in *Dietz* permitted defendants to name the plaintiff's immune employer as a nonparty at fault, the court did not "view the [worker's compensation] lien provisions as a limitation on the amount of damages recoverable and [found] no violation of article 2, § 31." *Dietz*, 169 Ariz. at 511, 821 P.2d at 172. Arizona courts also have upheld the legislature's abolition of joint and several liability against constitutional attacks similar to plaintiff's here. *See Jimenez*, 183 Ariz. at 407, 904 P.2d at 869 ("The recovery of those damages caused by the fault of any causal contributor is not limited by either [§ 12–2505 or § 12–2506]; the effect is only to limit each defendant's liability to the damages resulting from that

defendant's conduct."); *Church*, 173 Ariz. at 348, 842 P.2d at 1361 (holding that § 12–2506 "does not offend the clauses of the Arizona Constitution precluding the abrogation of the right to bring an action or limiting damages."). Moreover, Arizona courts repeatedly have "rejected the argument that defendants with preventative responsibilities may not shift fault to persons whose conduct they should have [anticipated and] prevented from causing harm." *McKillip v. Smitty's Super Valu Inc.*, 190 Ariz. 61, 65, 945 P.2d 372, 376 (App.1997), and cases cited therein.

¶ 16 Plaintiff does not challenge those cases which, as she correctly notes, did not squarely address the specific constitutional argument she presents here.[7] Nonetheless, the reasoning and conclusions of those decisions lead us to reject plaintiff's constitutional challenge here. Plaintiff's argument, although couched in terms of "causation" in order to bring article 2, § 31 into play, is substantially similar to the arguments made and rejected in the foregoing cases. In accordance with those decisions, we hold that A.R.S. § 12–2506 is a permissible legislative regulation which, although sometimes reducing "as a practical matter the damages which the plaintiff . . . will receive," *Church*, 173 Ariz. at 346, 842 P.2d at 1359, does not violate article 2, § 31.

¶ 17 The legislative abolition of joint and several liability in 1987 clearly may result in a plaintiff receiving less damages from a defendant who "caus[ed] the death or injury," article 2, § 31, than the plaintiff potentially would have received under prior Arizona law. *Compare Church with Gehres*. For example, in *Church*, the jury found that Rawson's negligence was a cause of plaintiff's injury, but her net recovery against Rawson was only $17,541.83 (one-third of the total damage award), instead of the $35,083.66

Ariz. at 81 n. 9, 688 P.2d at 973 n. 9 ("It is obvious, however, that the two provisions were intended to guarantee the same basic right."); *Samaritan Health System v. Superior Court*, 278 Ariz. Adv. Rep. 27, 194 Ariz. 284, 981 P.2d 584, 1998 WL 652190 (Ct.App. September 24, 1998).

**6.** One commentator has suggested that article 2, § 31 would preclude the legislature from arbitrarily limiting the amount of damages recoverable in a recognized cause of action, but might not

prohibit it from "substitut[ing] a reasonable compensation system, for example a no-fault insurance system for auto accidents, for certain types of tort actions as long as there were no other constitutional impediments." Roger C. Henderson, *Tort Reform, Separation of Powers, and the Arizona Constitutional Convention of 1910*, 35 Ariz. L.Rev. 535, 618–19 n. 713 (1993).

**7.** Contrary to Nissan's assertion, *Zuern* did not address any constitutional issues at all.

(two-thirds of the total damage award) she would have recovered from Rawson under the 1984 version of UCATA. *See Dietz,* 169 Ariz. at 508, 821 P.2d at 169 ("The 1984 enactment of UCATA left in place the common law doctrine that a defendant whose wrong had contributed to the damage to any degree could be liable for all of the damage."); *Cheney v. Arizona Superior Court,* 144 Ariz. 446, 448, 698 P.2d 691, 693 (1985) (under 1984 version of UCATA, "plaintiff's damages [were] reduced in proportion to the relative degree of plaintiff's fault which [was] the proximate cause of the injury or death"). Moreover, under pre-UCATA Arizona common law, a jury could have awarded the plaintiff in *Church* her full damages, despite her contributory negligence. *See Williams v. Thude,* 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997) (before 1984 adoption of comparative fault, "[a]s a practical matter, ... juries were essentially free to grant plaintiffs a full recovery, no recovery, or anything in between"). If the result in *Church* does not unconstitutionally "limit[ ] the amount of damages to be recovered for causing the death or injury of any person" under article 2, § 31, as *Church* held and *Jimenez* suggested, neither does the assessment of damages based on allocation of fault under § 12–2506(A). A contrary conclusion would essentially "exclude the legislature from any meaningful enactment because almost any statute dealing with tort actions will affect the amount or potential of recovery." *Jimenez,* 183 Ariz. at 407–08, 904 P.2d at 869–70.

¶ 18  Plaintiff contends, somewhat persuasively, that the statutory framework for assessing damages based strictly on fault allocation is bad policy and unfairly limits plaintiffs' recovery.[8]  According to plaintiff, the current system may produce unjust and inconsistent results, particularly in cases like this when the plaintiff is free of any fault.[9] Allocation of fault percentages among parties and nonparties obviously depends largely on the nature and extent of their respective negligence and the causal role of each in producing injury.  The more egregious the negligence of a nonparty, for example, the more likely the trier of fact will allocate a sizable percentage of fault to him or her, thereby reducing the allocable percentages of fault against other defendants and reducing the plaintiff's net recovery of damages.

¶ 19  As a comparison of *Zuern* and *Hutcherson* illustrates, however, the statutory allocation of fault system does not necessarily favor plaintiffs or defendants.  Rather, the system permits jurors to evaluate all the evidence, including facts bearing on causation, and allocate fault based on the jurors' collective concept of what is fair.[10]  Although the judiciary "has an obligation to participate in the evolution of tort law so that it may reflect societal and technological changes," *Law v. Superior Court,* 157 Ariz. 147, 156, 755 P.2d 1135, 1144 (1988), if factual varia-

---

8.  We note that the parties stipulated, and the jury was informed, that "Kimberly Griesmer's medical bills have been and will be paid by the Arizona State Workers Compensation Fund," that plaintiff could not sue Pandhi, and that any repayment of medical benefits to the State Compensation Fund would "be reduced by the percentage of fault found against Dr. Pandhi."  *See Aitken v. Industrial Commission,* 183 Ariz. 387, 392, 904 P.2d 456, 461 (1995), *cert. denied, Amphitheater Public Schools v. Aitken,* 517 U.S. 1208, 116 S.Ct. 1824, 134 L.Ed.2d 930 (1996) (holding that worker's compensation carrier "may assert a lien on a third party recovery only to the extent that the compensation benefits paid exceed the employer's proportionate share of the total damages fixed by verdict in the action").

9.  This court has recognized that "the comparative fault statute apportions fault, even at the expense of the plaintiff."  *Rosner v. Denim & Diamonds, Inc.,* 188 Ariz. 431, 433, 937 P.2d 353, 355 (App.1996).  Some commentators have criticized the current statutory framework.  *See* Jefferson L. Lankford & Douglas A. Blaze, *The Law of Negligence in Arizona* § 6.2(2)(a) at 145 (1992); Kelly Catherine Myers, *Tort "Reform" in Arizona: An Analysis of the Demise of Joint and Several Liability,* 35 Ariz. L.Rev. 719 (1993).  In addition, as our supreme court recognized in *Piner,* the *Restatement (Second) of Torts* § 433A provides that "[d]amages for harm are to be apportioned among two or more causes where ... there is a reasonable basis for determining the contribution of each cause to a single harm."

10.  "Guiding this statutory revision was a desire to 'increase the fairness of the tort system for both plaintiffs and defendants' by making each tortfeasor liable for only his or her share of fault, and no more."  *Hutcherson,* 192 Ariz. at 54, 961 P.2d at 452, quoting Scot Butler, III & G. David Gage, *Comparative Negligence & Uniform Contribution: New Arizona Law,* 20 Ariz. B.J. 16, 16 (1984).

**150**

tions may produce inequities under the current comparative fault system, the legislature, not the judiciary, should address any necessary changes in this particular area.[11]

## DISPOSITION

¶ 20  The trial court's judgment is affirmed.

CONCURRING: J. WILLIAM BRAMMER, Judge, and JOSEPH W. HOWARD, Judge.

---

11.  As our supreme court has stated: "[T]he regime adopted to determine several liability is [not] part of the common law system of this state. [It is], instead, [a] creature[ ] of the legislature. Consequently, absent a constitutional violation, resolution of this problem must come from interpretation of the statutes." *Dietz,* 169 Ariz. at 509, 821 P.2d at 170.