Juan SEGUNDO, et al.,
Plaintiffs-Appellants,

v.

CITY OF RANCHO MIRAGE, a
municipal corporation,
Defendant-Appellee.

Jean Chormicle KAPP, et al.,
Plaintiffs-Appellants,

v.

CITY OF CATHEDRAL CITY, CALI-
FORNIA, et al.,
Defendants-Appellees.

85–6592.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1987.

Decided April 2, 1987.

Richard Cross, Riverside, Cal., George Forman, Berkeley, Cal., for plaintiffs-appellants.

Virginia R. Pesola, Los Angeles, Cal., for defendant-appellee.

Before KENNEDY and POOLE, Circuit Judges, and LOVELL,* District Judge.

LOVELL, District Judge:

Appellants, members of the Agua Caliente Band of Cahuilla Indians and their non-Indian lessee, appeal an adverse judgment by the District Court upholding rent control ordinances enacted by the Appellee cities of Rancho Mirage and Cathedral City and applied to allotted lands of the Indian Appellants. The central issue on appeal is whether local rent control ordinances may be applied to a mobile home park operated by a non-Indian entity on Indian land held in trust by the United States.

## FACTS

Appellants are Indian allottees of several parcels of land located within the Agua Caliente Reservation, situated near Palm Springs, California. In 1968, with approval of the Secretary of the Interior, Appellants entered into a 65-year lease with Palm Springs Mobile Country Club [1] for the construction and operation of a mobile home park on the allotments. Now known as De Anza Palm Springs Mobile Country Club, the park lies partially within the limits of Rancho Mirage and partially within the limits of Cathedral City.

Under the lease, De Anza pays Appellant allottees a guaranteed minimum annual rental plus 15% of the gross receipts from the subleasing of mobile home spaces plus

---

* Honorable Charles C. Lovell, United States District Judge, District of Montana, sitting by designation.

1. Appellant De Anza Properties IX is the assignee of Palm Springs Mobile Country Club and the holder of the lease since 1977. All references in this opinion to the lessee shall be to "De Anza."

a percentage of receipts from other business activities operated on the premises.

On May 4, 1982, the City of Rancho Mirage enacted a local ordinance establishing a Mobile Home Fair Practices Commission and imposing maximum rent increase limits upon all mobile home parks located within the City. A similar ordinance was approved by Cathedral City on March 18, 1983. The two ordinances are substantially identical and, in pertinent part, limit annual rent increases in mobile home parks to 75 percent of the increase in the applicable Consumer Price Index for the year preceding the rent increase. Park owners may apply to the respective Commissions for a "hardship" increase.

Following Appellees' attempts to enforce the ordinances against De Anza, Appellants filed complaints for declaratory and injunctive relief and for monetary damages, seeking a ruling that the subject ordinances could not be applied to allotted lands held in trust by the United States, and that the cities be permanently enjoined from attempting to enforce the ordinances against the allottees and their lessee De Anza. After a consolidated bench trial, the District Court entered findings of fact and conclusions of law, finding the ordinances to be valid exercises of the cities' police powers, regulating only relations between non-Indians and having no significant impact on the allottees.

Appellants contend that the District Court erred in failing to find invalid the application of the ordinances to the De Anza park, in failing to find a violation of 42 U.S.C. § 1983, in ruling that the trust patents under which the allottees hold their land would expire in October 1986, and in relying solely upon the testimony of appellees' single expert witness in reaching its determination.

DISCUSSION

The dispositive issue in this case is whether the ordinances are valid under either Public Law 280[2] or federal common law.

A. *Jurisdiction and Standard of Review*

■ Federal subject matter jurisdiction is present pursuant to 28 U.S.C. § 1331. The issue, the extent to which federal law divests the cities of the power to exercise jurisdiction over non-Indians operating an enterprise on Indian land, is a sufficient basis for federal question jurisdiction. *See Kimball v. Callahan*, 493 F.2d 564, 565 (9th Cir.), *cert. denied*, 419 U.S. 1019, 95 S.Ct. 491, 42 L.Ed.2d 292 (1974). *See also Cardin v. De La Cruz*, 671 F.2d 363, 365 (9th Cir.), *cert. denied*, 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982). The fact that these cases were brought by individual tribal members rather than by the Tribe itself is irrelevant to the existence of federal jurisdiction. *See Agua Caliente Band of Mission Indians v. County of Riverside*, 442 F.2d 1184, 1185 (9th Cir.1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); *Babbitt Ford, Inc. v. Navajo Indian Tribe*, 710 F.2d 587, 594 (9th Cir.1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984).

Jurisdiction rests with this court pursuant to 28 U.S.C. § 1291.

This court reviews a denial of injunctive relief for abuse of discretion. The district court will be reversed only if its decision was based on an erroneous legal standard or on clearly erroneous findings of fact. *SEC v. Goldfield Deep Mines Co.*, 758 F.2d 459, 465 (9th Cir.1985); *Bank of America National Trust & Savings Assn. v. Summerland County Water District*, 767 F.2d 544, 547–48 (9th Cir.1985).

B. *Expiration of the Trust Patents*

The District Court ruled that the trust patents under which the allottees hold their lands would expire on October 11, 1986; thus, the court reasoned, once the patents expired and the allottees became subject to all laws of the State of California, the rent control ordinances would apply to the De Anza mobile home park regardless of appellants' status as tribal members. 25 U.S.C. § 349.

**2.** Pub.L. No. 83–280, 67 Stat. 588, codified in pertinent part at 28 U.S.C. § 1360.

The trust patents were issued October 12, 1961, for a period of 25 years. *See* 25 U.S.C. § 348. The District Court failed to recognize, however, that the Secretary of the Interior, on July 20, 1983, extended the trust period to January 1, 1989. 25 C.F.R. app. 1 (1986) (text at 48 Fed.Reg. 34,026 (1983)).[3] The trust status clearly having been extended, the District Court's ruling was in error.

### C. *Public Law 280*

■ Under Public Law 280 (P.L. 280),[4] state laws "of general application" were extended into Indian Country, to be applied with "the same force and effect ... as they have elsewhere within the State." Although its language is broad, P.L. 280 has been narrowly interpreted to confer state jurisdiction over private civil litigation involving reservation Indians, and does not constitute a grant of general civil regulatory authority. *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); *Fort Mojave Tribe v. County of San Bernardino*, 543 F.2d 1253, 1257 (9th Cir.1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977).

This court has refused to extend P.L. 280 jurisdiction to local governments. *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 661 (9th Cir.1975), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977). *Accord United States v. County of Humboldt*, 615 F.2d 1260 (9th Cir.1980). We held in *Santa Rosa* that Congress' apparent intent in enacting P.L. 280 was to "make the tribal government over the reservation more or less the *equivalent* of a county or local government in other areas within the state, empowered ... to regulate matters of local concern within the area of its jurisdiction." *Santa Rosa*, 532 F.2d at 663 (emphasis added). On this basis, and in view of the present federal policy to foster tribal self-government and economic self-development, we concluded that P.L. 280 subjected Indian

Country to only the civil laws of the state, and not to local regulation. *Id.* at 661, 664.

Under *Santa Rosa* and *Bryan*, it is clear that P.L. 280 cannot serve as the jurisdictional basis for application of the subject ordinances within Indian country.

### D. *Federal Common Law*

In the development of federal Indian law, the Supreme Court long ago departed from the "view that 'the laws of [a State] can have no force' within reservation boundaries." *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 141, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (*quoting Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 560, 8 L.Ed. 483 (1832)). Nevertheless, the Court continues to recognize inherent "attributes of sovereignty [in Indian tribes] over both their members and their territory." 448 U.S. at 142, 100 S.Ct. at 2583; *see also New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 332, 103 S.Ct. 2378, 2385, 76 L.Ed.2d 611 (1983).

■ State laws may be applied to Indian reservations unless such application would impair a right granted or reserved by federal law or would infringe upon the right of reservation Indians to make their own laws and be ruled by them. *Rice v. Rehner*, 463 U.S. 713, 718, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). These principles constitute two independent but related barriers to the exercise of state jurisdiction, since either can be a sufficient basis for holding state law inapplicable. *Bracker*, 448 U.S. at 143, 100 S.Ct. at 2583. The trend has been to rely more on federal preemption, using notions of Indian self-government as a "'backdrop' against which any assertion of state authority must be assessed." *Mescalero Apache*, 462 U.S. at 334, 103 S.Ct. at 2386 (*quoting Bracker*, 448 U.S. at 143, 100 S.Ct. at 2583).

State law is generally inapplicable when concerned solely with on-reservation conduct involving Indians. *See Bracker*, 448

---

**3.** Testimony was also presented indicating that, regardless of the location of the allotments, all trust or restrictive periods on allotments expiring on a given date generally have been extended by a single Executive order issued annually. *See also* 25 C.F.R. app. 1 at 779 (1986).

**4.** *See* note 2, *supra*.

U.S. at 144, 100 S.Ct. at 2584; *Santa Rosa,* 532 F.2d at 658. Where the State asserts authority over the conduct of non-Indians engaging in activity on the reservation, the court must undertake

a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.

*Bracker,* 448 U.S. at 145, 100 S.Ct. at 2584.

Appellants assert that federal statutes and extensive regulation of leasing by the Secretary of the Interior preempt application of the ordinances to the De Anza park.

Leasing of Indian lands, whether tribally or individually owned, is authorized by 25 U.S.C. § 415(a). Such lands may be leased by the Indian owners with the approval of the Secretary of the Interior. *Id.* Section 415 limits the period of all leases so granted to a term of 25 years, except leases on certain reservations, including the Agua Caliente Reservation, which may be for a term of not to exceed 99 years. It further provides that "all leases and renewals shall be made under such terms and regulations as may be prescribed by the Secretary of the Interior." Several factors are specified which must be considered by the Secretary prior to approval of any lease or extension of an existing lease. *Id.*

Regulations have been promulgated under section 415, requiring certain lease provisions, setting limits on duration, establishing requirements for subleasing, and providing other restrictions. 25 C.F.R. Part 162 (1986). In part, the regulations prohibit the Secretary from approving a lease at less than the fair annual rental, unless in his judgment such action would

be in the best interests of the landowners. 25 C.F.R. § 162.5(b) (1986). The regulations require the lease to be limited to the "minimum duration, commensurate with the purpose of the lease, that will allow the highest economic return to the owner consistent with prudent management and conservation practices," and additionally require periodic review of the equities involved. 25 C.F.R. § 162.8 (1986). Any adjustments of rental resulting from such review must be made with the written concurrence of the owners and the approval of the Secretary. *Id.*

In addition to the specific provisions regarding leasing of Indian lands, 25 C.F.R. § 1.4 provides that unless specifically adopted by the Secretary,

none of the laws, ordinances, codes, resolutions, rules or other regulations of any State or political subdivision thereof limiting, zoning or otherwise governing, regulating, or controlling the use or development of any real or personal property, ... shall be applicable to any such property leased from ... any Indian or Indian tribe ... that is held in trust by the United States....

Pursuant to 25 C.F.R. § 1.4(b), the Secretary has adopted and made applicable all laws of the State of California regulating or controlling the use or development of property held in trust by the United States for an Indian or Indian tribe and located within the State of California. 30 Fed.Reg. 8722 (1965). The Secretary expressly excluded the laws, ordinances and other regulations of the various counties and cities within the State, concluding that such local laws would be considered separately. *Id.* The Secretary has not adopted or applied the subject ordinances of the Cities of Rancho Mirage and Cathedral City.[5]

**5.** The Tribe has entered into an agreement with Cathedral City, extending the City's land use controls to trust lands within the City limits. By the terms of the contract, the Tribe agreed to (1) adopt by ordinance all existing Cathedral City land use controls, and (2) designate the City as its agent for enforcement of Tribal land use controls on trust lands within the City limits. The City agreed to allow appeals from any final land use decision by the City to the Tribal Council, for the purpose of preserving Tribal control over reservation land use.

The contract expressly provides that it in no way limits the authority and duty of the Department of the Interior and Bureau of Indian affairs to negotiate and administer existing and future leases of trust lands. Appellants and the Tribe, as amicus, assert that this provision in the contract was intended to prevent any local attempt to regulate the use of leased trust lands, and did not authorize application of the City's rent control ordinances to appellants' allotted

Appellees argue that the federal statutes authorizing the leasing of trust lands and the regulations governing such leasing do not constitute a comprehensive regulatory scheme with preemptive effect on state and local laws. We cannot agree.

In *White Mountain Apache Tribe v. Bracker, supra,* the Supreme Court found that comprehensive federal regulation of Indian timber harvesting preempted application of Arizona's tax laws to a non-Indian logging company operating entirely on Indian lands. 448 U.S. at 148, 100 S.Ct. at 2586. The Court relied on federal law granting the Secretary broad authority over reservation timber sales, specifically, the requirement that timber sales "be based upon a consideration of the needs and best interests of the Indian owner and his heirs," 25 U.S.C. § 406(a); the detailed set of regulations governing the harvesting and sale of tribal timber, 25 C.F.R. Part 141; and the "overriding federal objective of guaranteeing Indians that they will 're-ceive ... the benefit of whatever profit [the forest] is capable of yielding....' 25 C.F.R. § 141.3(a)(3) (1979)." *Id.,* 448 U.S. at 146–49, 100 S.Ct. at 2585–86. In the face of such a regulatory scheme, there could be "no room" for the imposition of state taxes. *Id.* at 148, 100 S.Ct. at 2586.

The Court subsequently held that federal law preempted a state tax imposed on the gross receipts of a non-Indian construction company from a tribal school board for the construction of a school for Indian children on the reservation. *Ramah Navajo School Board, Inc. v. Bureau of Revenue of New Mexico,* 458 U.S. 832, 846–47, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982). Relying on Congressional enactments empowering the BIA to provide for Indian education and the "comprehensive regulations" promulgated thereunder, the Court found no substantive distinction from *White Mountain,* and held the state tax inapplicable. *Id.,* 458 U.S. at 839–42, 102 S.Ct. at 3399–01.

A similar result was reached in *New Mexico v. Mescalero Apache Tribe,* in which the Court held that New Mexico could not enforce its hunting and fishing

regulations within the boundaries of the reservation. 462 U.S. at 343–44, 103 S.Ct. at 2391–92. The Court first noted that the Tribe possessed the power to regulate on-reservation hunting and fishing. *Id.* at 337–38, 103 S.Ct. at 2388–89. Next, the Court considered whether the State and Tribe could exercise concurrent jurisdiction over non-Indian hunting and fishing within the reservation. Observing that federal law requires the Secretary to review each tribal hunting and fishing ordinance, the Court held that exercise of concurrent jurisdiction "would completely 'disturb and disarrange' the comprehensive scheme of federal and tribal management established pursuant to federal law." *Id.* at 338–39, 103 S.Ct. at 2388–89 (*quoting Warren Trading Post Co. v. Arizona Tax Comm'n,* 380 U.S. 685, 691, 85 S.Ct. 1242, 1245, 14 L.Ed.2d 165 (1965)).

The Court's seeming departure from the *White Mountain* line of cases came in *Rice v. Rehner,* where it permitted California to require Indian traders to obtain a state liquor license to sell liquor for off-premises consumption. 463 U.S. at 733–34, 103 S.Ct. at 3303. Applying the *White Mountain* analysis, the Court found no federal preemption of liquor regulation by the states. *Id.* at 734, 103 S.Ct. at 3303. The Court principally relied upon the "historical tradition of concurrent state and federal jurisdiction over the use and distribution of alcoholic beverages in Indian country," combined with the specific language of 18 U.S.C. § 1161, which repudiated the federal prohibition against liquor transactions with Indians so long as such transactions conformed with the laws of the State. *Id.* at 724, 733, 103 S.Ct. at 2398, 3303. In fact, the Court reasoned that section 1161 withdrew prior federal preemption of liquor regulation and conferred such authority on the states, concurrently with the tribes. *Id.* at 726, 103 S.Ct. at 3299.

■ Applying *White Mountain* and its progeny to the facts of this case, we conclude that application of the rent control

lands. Appellees have not suggested that the

contract applies to the ordinances in question.

ordinances at issue is preempted by federal law.

The statutory and regulatory scheme present in this case is substantially similar to those involved in *White Mountain, Ramah,* and *Mescalero Apache.* The Secretary is required to undertake detailed consideration of the lease provisions to determine whether the lease furthers the best interests of the Indian owner. *See* 25 U.S.C. § 415(a); 25 C.F.R. § 162.5. The overriding federal interest is to obtain the "highest economic return to the owner consistent with prudent management and conservation practices." 25 C.F.R. § 162.8. Although daily supervision is not required, major revisions in the lease arrangement, such as subleases or assignments and rental adjustments, require Secretarial approval. *See* 25 C.F.R. §§ 162.8, 162.12. *See also Central Machinery Co. v. Arizona State Tax Comm'n,* 448 U.S. 160, 165 n. 4, 100 S.Ct. 2592, 2596 n. 4, 65 L.Ed.2d 684 (1980). More important, the regulations expressly provide that local ordinances limiting or in any way regulating the use or development of property may not be applied to lands held in trust by the United States. 25 C.F.R. § 1.4.[6]

Unlike *Rice v. Rehner,* the United States has enacted no law conferring jurisdiction in this area upon the states or their political subdivisions. On the contrary, the regulatory scheme surrounding leasing of Indian lands leaves "no room" for application of the ordinances at issue.

It is beyond question that land use regulation is within the Tribe's legitimate sovereign authority over its lands. *See Cardin v. De La Cruz,* 671 F.2d 363 (9th Cir.), *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982); *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). *Accord Knight v. Shoshone and Arapahoe Indian Tribes of the Wind River Reservation,* 670 F.2d 900 (10th Cir.1982). The Tribe's concern with

land use and development is evidenced by its contract with Cathedral City and the ordinance enacted in conjunction therewith.[7] Although tribal rent control ordinances have not been enacted, failure of the Tribe to legislate does not constitute a relinquishment of its authority to do so. *See generally Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 145, 102 S.Ct. 894, 905, 71 L.Ed.2d 21 (1982) ("A nonmember who enters the jurisdiction of the tribe remains subject to the risk that the tribe will later exercise its sovereign power.").

To permit concurrent jurisdiction by appellees in this area "not only would threaten to disrupt the federal and tribal regulatory scheme, but would also threaten Congress' overriding objective of encouraging tribal self-government and economic development." *Mescalero Apache,* 462 U.S. at 341, 103 S.Ct. at 2390. Unlike the field of taxation, where the laws of both the State and Tribe may be enforced simultaneously, *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 158, 100 S.Ct. 2069, 2083, 65 L.Ed.2d 10 (1980), the cities' rent control ordinances would necessarily preclude enforcement of a conflicting ordinance enacted by the Tribe, and would "effectively nullify" the Tribe's authority to regulate the use of its lands. 462 U.S. at 343–44, 103 S.Ct. at 2391–92. The cities' interest in providing affordable housing to its citizens who choose to live within the boundaries of the reservation cannot overcome the interests of the Tribe in being able to make its own laws in this important area and to be governed by them. *See Cabazon Band of Mission Indians v. County of Riverside,* 783 F.2d 900 (9th Cir.1986), *aff'd,* — U.S. ——, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987).

Viewing the "backdrop" of tribal sovereignty in conjunction with the comprehensive regulatory scheme governing leases of Indian land, we conclude that the rent con-

---

**6.** Section 1.4 was upheld by this court as a valid exercise of the Secretary's rulemaking authority in *Santa Rosa. See* 532 F.2d at 665.

**7.** Ordinance No. 10 of the Agua Caliente Band of Cahuilla Indians, adopted by the Tribal Council January 24, 1984. A similar arrangement apparently exists with the City of Palm Springs, and the Tribe is continuing negotiations with the City of Rancho Mirage.

trol ordinances adopted by the Appellee cities are preempted by federal law.

### E. *Section 1983*

■ Appellants assert that, under color of state law, Appellees deprived them of a right, privilege, or immunity secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, and thus that they are entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

This question is controlled by our recent decision in *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 852 (9th Cir. 1987). There we held that preemption of state law under the Supremacy Clause—being grounded not on individual rights but instead on considerations of power—will not support an action under section 1983, and will not, therefore, support a claim for attorneys' fees under section 1988. *Id.* at 1213.

We find this case substantially indistinguishable from *Williams*, and therefore hold that appellants have not stated a claim for relief under section 1983 and may not recover attorneys' fees under section 1988.[8]

CONCLUSION [9]

Following recent Supreme Court precedent in the area of federal preemption, and applying the backdrop of tribal sovereignty, we conclude that application of the ordinances adopted by the cities of Rancho Mirage and Cathedral City to the mobile home park situated on allotted lands held by the United States in trust for the appellants is preempted by federal law.[10]

The judgment of the District Court is REVERSED and REMANDED with instructions to enter a permanent injunction against enforcement of the subject ordinances upon the De Anza Palm Springs Mobile Country Club, situated on lands owned by the United States in trust for the Appellant allottees.

---

**8.** Our recent decision in *Coos Bay Care Center v. Oregon*, 803 F.2d 1060 (9th Cir.1986), is not applicable to this case.

**9.** Appellants have raised a final issue concerning the district court's reliance on certain expert testimony. Based upon the ruling herein, we find it unnecessary to consider this issue.

---

**10.** The parties have not relied upon *Hall v. City of Santa Barbara*, 797 F.2d 1493 (9th Cir.1986). Our decision herein makes it unnecessary for us to analyze these circumstances in light of that case.