937 P.2d 1198

PIMALCO, INC., an Arizona Corporation; Payless Cashways, Inc., an Iowa Corporation; Gila River Indian Community, a Federally Recognized Indian Tribe, Plaintiffs–Appellants,

v.

MARICOPA COUNTY, a Subdivision of the State of Arizona; Arizona Department of Revenue, an Agency of the State of Arizona; Pete Corpstein, Maricopa County Assessor; and Doug Todd, Maricopa County Treasurer, Defendants–Appellees.

No. 1 CA–TX 96–0002.

Court of Appeals of Arizona, Division 1, Department T.

Jan. 9, 1997.

Snell & Wilmer, L.L.P. by Janet E. Barton, Phoenix, for Pimalco, Inc.

Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C. by Arthur W. Pederson, Phoenix, for Payless Cashways, Inc.

Law Offices of Rodney B. Lewis by Rodney B. Lewis, Sacaton, for Gila River Indian Community.

Helm & Kyle, Ltd. by John D. Helm, Roberta S. Livesay, Michelle L. Margolies, Tempe, for Maricopa County, Pete Corpstein and Doug Todd.

Grant Woods, Attorney General by Patrick Irvine and Stephen C. Lepley, Assistant Attorneys General, Tax Division, Phoenix, for Arizona Department of Revenue.

TOCI, Judge.

In actions consolidated in the tax court, Pimalco, Inc. and Payless Cashways, Inc. ("taxpayers") sought refunds of property taxes assessed on their leasehold interests in real property held by the United States Government in trust for the Gila River Indian Community ("the tribe"). The tribe challenged the validity of the possessory interest tax.[1] The parties now appeal from the grant of summary judgment to Maricopa County ("the County") and the Arizona Department of Revenue ("DOR").

The taxpayers and the tribe contend that (1) the tax court erred in finding the leasehold interests constituted a "possessory interest" taxable under former Ariz.Rev.Stat. Ann. ("A.R.S.") sections 42–681 and 42–682; (2) Arizona's former possessory interest tax was invalid under federal Indian law, constituted a direct tax on Indian lands, and unduly interfered with tribal self-government; (3) the County's enforcement of the possessory interest tax violated the taxpayer's rights to equal protection; and (4) the taxpayers were entitled to partial refunds of 1993 possessory interest taxes under a statute that retroactively reclassified non-ownership interests in Indian lands and subjected them to a one

---

1. Biegert Aviation, Inc. also joined as a plaintiff in the action filed by the tribe but did not appeal from the judgment.

percent assessment factor. We find no error in the tax court's judgment on the first three issues but reverse and remand as to the fourth.

## I. FACTUAL AND LEGAL BACKGROUND

The Gila River Indian Community is a federally-recognized Indian tribe. It occupies a reservation of approximately 372,000 acres in Maricopa and Pinal Counties. The United States of America holds title to the land in trust for the tribe, but the tribe governs and administers the land.

Using federal grant money, the tribe developed the Lone Butte Industrial Park ("the Industrial Park") on its reservation. In 1966, the tribe leased the Industrial Park to Lone Butte Industrial Development Corporation ("Development Corp."), a tribally-chartered instrumentality of the tribe, with the approval of the United States Secretary of the Interior. The Development Corp. then subleased a portion of the Industrial Park to Pimalco for its manufacturing business and to Payless Cashways for its business of warehousing and distributing building materials.

The subleases required each taxpayer to build certain improvements on the land and provided that the improvements were part of the real property owned by the United States in trust for the tribe. The subleases were not binding on either the tribe or lessee until approved by the Secretary of the Interior. They acknowledged that while the leased premises are in trust or restricted status, all of the lessees' obligations under the lease, and the obligations of its sureties, are to the United States Government, as well as to the lessor. Each sublease gave the lessee "the right to contest any claim, asserted tax or assessment against the property by posting bond to prevent enforcement of any lien resulting therefrom" and required the lessee to hold harmless the Development Corp., the

tribe, the Secretary of the Interior, and the leased premises "from any and all claims, taxes, assessments and like charges," and "from any lien or sale or other proceedings to enforce payment thereof, and all costs in connection therewith."

In 1985, the Arizona legislature for the first time extended ad valorem property taxation to rights to possess and actual possession of land or improvements under non-freehold rights.[2] 1985 Ariz. Sess. Laws Ch. 264, §§ 1, 2. Former A.R.S. section 42–682 subjected "possessory interests" in the property of federal, state, county, and municipal governments and their subdivisions to taxation as unsecured personal property. *See* A.R.S. §§ 42–601 *et seq.* But, A.R.S. section 42–684 expressly exempted a number of possessory interests in governmental property, including those in "property held in trust for an Indian or an Indian tribe by the United States government." A.R.S. § 42–684(4) (1991) (repealed by Ariz. Sess. Laws Ch. 191, § 9).

In an unpublished and unappealed ruling in 1993, the Arizona Tax Court invalidated those exemptions on the ground that they were not authorized under our constitution. *See Scottsdale Princess Partnership v. Maricopa County*, 185 Ariz. 368, 371, 916 P.2d 1084, 1087 (App.1995) (appeal resolving other rulings in same case). The legislature then (1) repealed and replaced former A.R.S. section 42–684, (2) added a new class twelve to the property classification statute and assessed that class at one percent of full cash value, (3) extensively amended the sections governing possessory interests, and (4) enacted a number of exemptions from the possessory interest tax. 1993 Ariz. Sess. Laws Ch. 191. Most of the new exemptions, however, closely resembled those in the repealed version of A.R.S. section 42–686, which the

---

**2.** Under the Arizona Constitution art. 9, section 2(6), "[a]ll property in the State not exempt under the laws of the United States or under this Constitution or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law." Our supreme court, however, has long recognized that while the legislature has the power to tax, it may

choose not to exercise that power. *Maricopa County v. Fox Riverside Theatre Corp.*, 57 Ariz. 407, 412, 114 P.2d 245, 247 (1941) (absent express provision and administrative mechanism for taxing leasehold interests, such interests are not taxed); *see also Maricopa County v. Trustees of Arizona Lodge No. 2*, 52 Ariz. 329, 80 P.2d 955 (1938) (same for intangibles).

tax court had invalidated.[3]

Maricopa County brought a declaratory judgment action against the state to challenge the constitutionality of the new exemptions. In July 1993, in an unpublished and unappealed ruling, the tax court determined that the exemptions violated the Arizona Constitution. *Maricopa County v. State of Arizona, Dep't of Revenue*, TX 93–00217 (Ariz. Tax Ct. July 1993). The legislature repealed the exemptions effective July 17, 1994. 1994 Ariz. Sess. Laws Ch. 293, § 2.

Maricopa County thereafter classified the taxpayers' leasehold interests in the Industrial Park as class three commercial/industrial property for 1993 and assessed 1993 property taxes against them on twenty-five percent of full cash value. *See* A.R.S. § 42–227(A)(3) (1991). The taxpayers paid the assessments under protest.

In 1994, the legislature adopted the possessory interest taxing scheme at issue in this case. 1994 Ariz. Sess. Laws Ch. 293. Retroactive to January 1, 1993, A.R.S. section 42–162(A)(12)(g) included in class twelve, "[t]o the extent allowed pursuant to federal law, interests in property held in trust for an Indian or an Indian tribe by the United States government." If applied to the 1993 tax year, this amendment would have reduced the assessment factor for the taxpayers' leasehold interests from twenty-five percent (class three) to one percent (class twelve). *See* A.R.S. § 42–227(A)(3), (12) (as amended).

Effective January 1, 1993, A.R.S. section 42–681 governing possessory interests provided in relevant part:

3. "Possessory interest" means *possession of public property pursuant to an agreement with a governmental entity* regardless of how the interest is identified in any document by which it is created, except possession pursuant to and by virtue of ownership of a freehold interest in the real property or ownership of the improvements or personal property. For the purposes of this paragraph, *"governmental entity"* includes:

(a) A governmental entity described in paragraph 4, or

(b) An agent established by the governmental entity for the purpose of leasing the property.

4. *"Public property"* means real or personal property or improvements, or any combination of such property, owned or held by:

(a) *The United States, this state or any county, city, town or other political subdivision of this state as owner, trustee, agent or in any other capacity.*

(b) *An agency or instrumentality of the United States, of this state or of any county, city, town or other political subdivision of this state as owner, trustee, agent or in any other* capacity.

(Emphasis added.)

The enacting legislation further provided that it would apply retroactively to tax years after December 31, 1992, and that the possessory interests which had been exempt under the prior statutes should be assessed and taxed for tax year 1993 at the one percent rate. A.R.S. § 42–681(8). Finally, the statute barred any assessment "for any tax year prior to 1993 for possessory interests which were previously designated as exempt." A.R.S. § 42–681(9).

In 1995, the legislature repealed A.R.S. sections 42–681 through 42–687 effective retroactively to January 1, 1995. 1995 Ariz. Sess. Laws Ch. 294, § 8.

## II. THE LITIGATION

After exhausting their administrative remedies, the taxpayers commenced separate actions for refunds of the possessory interest taxes they had paid under protest for 1993.[4] The tribe commenced a separate action, in which Pimalco joined, attacking the validity of the possessory interest tax as applied to the leasehold interests in Indian land. After

---

**3.** For example, former A.R.S. § 42–271.01 exempted possessory interests in Indian tribal trust lands.

**4.** Although the taxpayers' opening brief requests refunds for 1993 and 1994, the record does not contain a request for refunds of 1994 taxes in the tax court.

the actions were consolidated, the taxpayers and the tribe unsuccessfully moved for summary judgment. The tax court found that the taxpayers' interests

> are possessory interests and were properly taxed as such . . . ; (2) taxing the possessory interests is not a tax on Indian land; (3) federal law does not preempt the tax; (4) there is no evidence of unconstitutional discrimination in the application of the tax laws; [5] plaintiffs are not entitled to a refund; and [6] these taxes do not unduly interfere with Tribal self-government.

The parties then stipulated that the tax court deny any claim for relief not adjudicated in the ruling on the motions for summary judgment. The tax court entered a formal judgment for the County and DOR, and the taxpayers and the tribe ("appellants") timely appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B); the appeal is assigned to Department T of this court pursuant to A.R.S. sections 12–120.04(G) and 12–170(C).

## III. ANALYSIS

### A. Taxpayers' Leasehold Interests in Tribal Land as "Possessory Interests"

Appellants first contend that their leasehold interests were not subject to taxation because they did not constitute "possessory interests" in public property as required under former A.R.S. section 42–681(3) and (4). We disagree.

### 1. Indian Land as "Public Property"

■ Appellants acknowledge that the definition of public property in former A.R.S. section 42–681(4) "might seem to encompass land held in trust by the United States for Indian tribes." They argue, however, that by failing to list Indian reservations in the definition of property and by classifying possessory interests in Indian land as class twelve property "[t]o the extent allowed pursuant to federal law," the legislature intended that federal law determine whether property within an Indian reservation was "public property."

Amended former A.R.S. section 42–162(A)(12)(g), however, did not condition the class twelve status of possessory interests in Indian trust lands on their being "public property" under federal law. The statute expressly defined public property in the language of former A.R.S. section 42–681(4) and presupposed that the interest in question met all the requirements of former A.R.S. section 42–681 for taxability under Arizona law. Former section 42–162(A)(12)(g) simply excluded from class twelve those possessory interests whose taxation federal law forbade.

Appellants also assert that the leasehold interests did not constitute interests in public property within former A.R.S. section 42–681(4). We disagree. The Industrial Park is held by the United States as trustee for the tribe. Property held by the United States as trustee is public property under former A.R.S. section 42–681(4)(a) and (b). The fact that the United States may also hold lands in trust for non-Indians or off-reservation lands in trust for Indians does not alter this conclusion. Moreover, because reservation land held by the United States in trust for Indians clearly falls within the definition of public property in former A.R.S. section 42–681(4), that statute's failure to specifically refer to reservation land in the definition of public property is not significant.

### 2. Taxpayers' Leaseholds as Taxable "Possessory Interests"

■ Appellants also contend that the leasehold interests are not "possessory interests" within former A.R.S. section 42–681(3) because the taxpayers do not possess their portions of the Industrial Park "pursuant to an agreement with a governmental entity." We are not persuaded.

The taxpayers assert that they contracted with the Development Corp., a tribally-chartered instrumentality that is neither an agency nor instrumentality of Arizona, of any state political subdivision, or of the United States. They argue that if the Development Corp. is not a "governmental entity" within former A.R.S. section 42–681(3), their leaseholds were not pursuant to an agreement with such a governmental entity, and the leaseholds were not possessory interests subject to taxation.

We cannot agree with this narrow interpretation of A.R.S. section 42–681(3). The nominal lessor under the taxpayers' subleases was indeed the Development Corp., but legal title to the subleased property is held by the United States; all contractual duties owed to the Development Corp. as lessor were equally owed to the United States Government; neither sublease could have been consummated without the approval of the United States Secretary of the Interior; and the tribe could not terminate the sublease without the consent of the federal government. See 25 U.S.C. § 415 and regulations thereunder; *Yavapai–Prescott Indian Tribe v. Watt*, 707 F.2d 1072 (9th Cir.1983), *cert. denied sub nom., Yavapai–Prescott Indian Tribe v. Clark*, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). Moreover, although the United States may not have been a formal party to the subleases, it was a signatory to them. We conclude that the taxpayers necessarily obtained their leaseholds "pursuant to an agreement with a governmental entity."

We are confident that this was the understanding of the legislature when it amended both former A.R.S. section 42–681 and former section 42–162. Specifically, it amended former section 42–162(A)(12) to classify possessory interests "as defined in section 42–681 ... in property held in trust for an Indian or an Indian tribe by the United States government" as class twelve taxable property "[t]o the extent allowed pursuant to federal law." 1994 Ariz. Sess. Laws Ch. 293, § 1. *See also* former A.R.S. § 42–271.01; former A.R.S. § 42–684 (1980). Appellants have not satisfactorily explained why the legislature would have adopted this amendment if it did not intend for former A.R.S. sections 42–681 and 42–682 to tax contractual rights to possess Indian trust lands.

The tax court correctly found, therefore, that the taxpayers' leasehold interests were taxable possessory interests in public property within former A.R.S. section 42–681(3) and (4).

## B. Validity of Former Possessory Interest Tax under Federal Indian Law

### 1. Direct Tax on Indian Land

Under well-established principles, the individual states cannot levy taxes on Indian tribes, reservation Indians, or reservation Indian or tribal-owned property. See *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 170–71, 93 S.Ct. 1257, 1261–62, 36 L.Ed.2d 129 (1973); *Oklahoma Tax Comm'n v. Texas Co.*, 336 U.S. 342, 366–67, 69 S.Ct. 561, 574–75, 93 L.Ed. 721 (1949); *see also Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152, 100 S.Ct. 2069, 2080–81, 65 L.Ed.2d 10 (1980); *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 480–81, 96 S.Ct. 1634, 1644–45, 48 L.Ed.2d 96 (1976); *Industrial Uranium Co. v. State Tax Comm'n of Arizona*, 95 Ariz. 130, 134, 387 P.2d 1013, 1015–16 (1963). The appellants suggest that the possessory interest tax was necessarily on reservation real property, including the tribe's reversionary interest, and therefore that as applied to the leasehold interests, it was an invalid tax on Indian land.

Appellants also argue that the state has no authority to enter the reservation to sell a leasehold to foreclose a lien and that, unlike income or privilege taxes, an ad valorem tax is *in rem* and an obligation owed by the property itself. *Peabody Coal Co. v. Navajo County*, 117 Ariz. 335, 338, 572 P.2d 797, 800 (1977). Accordingly, they contend that the possessory interest tax encumbered not only the taxpayers' leasehold interests but also the tribe's reversionary interest in the leased parcels.

By its express terms, former A.R.S. section 42–682 taxed only possessory interests in real property. The lien of the tax extended only to the property actually subject to the tax. *See* A.R.S. § 42–609. During 1993 and 1994, the taxpayers and not the tribe owned the possessory interests the state sought to tax.[5]

---

**5.** Contrary to the implicit premise of appellants' argument, former § 42–682 did not state that the taxpayers' possessory interests constituted unsecured personal property. It provided only that possessory interests in public property were "subject to taxation as unsecured personal property under this chapter." Former § 42–682(A)(2). Through that device, the legislature

*Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), cited by appellants, is inapposite. There, the Supreme Court invalidated a New Mexico use tax on personal property that a tribe had purchased and used to construct a ski lift; after construction, the tribe became the sole owner of the property. 411 U.S. at 158, 93 S.Ct. at 1275–76. The Court held that a tax on the materials was essentially a state ad valorem tax on the tribe's fee estate from which the tribe was immune as a matter of federal law. Here, by contrast, the tribe has long since conveyed leasehold interests to non-Indian entities, and those interests alone were subjected to the possessory interest tax. Thus, the possessory interest tax did not illegally tax Indian tribal lands.

## 2. Preemption by Federal Statutory Law

■ Appellants assert that the extensive federal regulation of leaseholds in Indian trust lands, 25 U.S.C. §§ 81, 415 and 25 C.F.R. § 162, has preempted the field and that the state has no authority to legislate in this area. They cite a number of older Supreme Court decisions, beginning with *Warren Trading Post Co. v. Arizona State Tax Comm'n,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965)[6] and ending with *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983). They do not offer, however, the "particularized examination of the relevant state, federal, and tribal interests" required in an Indian law preemption case. *Ramah Navajo School Bd., Inc. v. Bureau of Revenue of New Mexico,* 458 U.S. 832, 838, 102 S.Ct. 3394, 3398, 73 L.Ed.2d 1174 (1982); *see Arizona Dep't of Revenue v. M. Greenberg Constr.,* 182 Ariz. 397, 897 P.2d 699 (App.1995). They also do not suggest how Arizona's taxation of their leasehold interests interferes with the tribe's use and development of its land.

The tribe recently failed to persuade the federal court with a similar argument in *Gila River Indian Community v. Waddell,* 91 F.3d 1232, 1239 (9th Cir.1996). The Ninth Circuit Court of Appeals held that federal statutes and regulations governing the leasing of trust lands did not preempt state sales tax on ticket sales by non-Indians to non-Indians for events held on the reservation. Although the court had recognized that tribal regulations of reservation land may preempt conflicting state rules in *Segundo v. City of Rancho Mirage,* 813 F.2d 1387 (9th Cir. 1987), also in that case the court held that in "the field of taxation ... the laws of both State and Tribe may be enforced simultaneously" and rejected the argument that "the mere existence of federal oversight over leasing of Indian lands preempts a state tax." *Id.* at 1393.

This result is consistent with a number of analogous decisions. *See Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 177, 109 S.Ct. 1698, 1708, 104 L.Ed.2d 209 (1989) (no preemption of state tax of non-Indian-owned oil and gas leaseholds in Indian lands when state provided substantial services, tax incidence was not on tribe, and federal and tribal regulation was not exclusive); *Washington,* 447 U.S. at 161, 100 S.Ct. at 2085 (federal laws encouraging Indian self-government and economic development do not preempt state taxation of cigarette sales on Indian reservation by non-members to non-members); *Salt River Pima–Maricopa Indian Community v. State of Arizona,* 50 F.3d 734, 736 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 186, 133 L.Ed.2d 123 (1995) (state tax on sales of non-Indian goods by non-Indians to non-Indians at shopping center on leased reservation land not preempted); *Fort Mojave Tribe v. San Bernardino County,* 543 F.2d 1253 (9th Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977) (state taxation of non-Indians' possessory interests in Indian lands not preempted); *M. Greenberg Constr.,* 182 Ariz. at 398, 897 P.2d at 700 (state prime contracting privilege taxes on receipts from construction contracts performed on Indian reservation not preempted); *State ex rel. Arizona Dep't of*

---

merely adopted for possessory interests the taxation model already specified for unsecured personal property.

**6.** Recently limited by *Department of Taxation & Finance of New York v. Milhelm Attea & Bros., Inc.,* 512 U.S. 61, 70–71, 114 S.Ct. 2028, 2034, 129 L.Ed.2d 52 (1994).

*Revenue v. Dillon,* 170 Ariz. 560, 566, 826 P.2d 1186, 1192 (App.1991) (state luxury tax on cigarette sales on reservation by nonmember to non-members not preempted).

We agree with the tax court that federal law did not preempt the taxation of the taxpayers' leaseholds in the Industrial Park under former A.R.S. section 42–682.

### 3. Undue Interference with Tribal Self–Government

■ Appellants also claim that the possessory interest tax infringed the tribe's right to make its own laws. *See Ramah Navajo Sch. Bd., Inc.,* 458 U.S. at 837, 102 S.Ct. at 3398; *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143–44, 100 S.Ct. 2578, 2583–84, 65 L.Ed.2d 665 (1980); *McClanahan,* 411 U.S. at 179, 93 S.Ct. at 1266; *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 270–71, 3 L.Ed.2d 251 (1959). They contend that state law collection procedures would establish a super-priority tax lien on the possessory interest and would require the county sheriff to seize and sell that interest at a public auction. *See* A.R.S. §§ 42–609 (tax lien); 42–613(C) (seizure of taxable property and posting of sale notice); 42–614(A) (sale at public auction to highest bidder); 42–683(A) (incorporating procedures of A.R.S. §§ 42–601 *et seq.* for collecting delinquent personal property taxes). A state tax lien would supersede and thus violate the tribe's ability to collect under its own leases, and the seizure and sale of any leasehold would impair the tribe's ability to retain desirable tenants and reject unacceptable ones. Appellants argue that the tax was therefore wholly invalid as applied to possessory interests in reservation lands.

The United States Court of Appeals for the Ninth Circuit rejected a similar argument in *Fort Mojave.* 543 F.2d 1253; *see also Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184, 1186 (9th Cir.1971). The *Fort Mojave* court sustained a state tax on possessory interests in leaseholds in reservation land despite an argument that state law collection procedures

might cloud the tribe's title and unlawfully encumber their land. 543 F.2d at 1258–59. The court noted that no tax sales and no injury to Indian rights had yet occurred nor did it expect future injury because federal laws both requiring the Secretary of the Interior to approve leases and allowing the tribe to refuse a lease could effectively "thwart tax sales contrary to the wishes of the Secretary and the Indians." *Id.* at 1259. State law nevertheless expressly allowed the county to recover the tax either by a direct suit or by seizing and selling the lessee's personal property, improvements, and possessory interests. *Id.*

Arizona law also contains collection procedures that would potentially transgress Indian rights if carried out against possessory interests on reservation land without the consent of the tribe and the Secretary of the Interior. *See* A.R.S. §§ 42–609 through 42–615. Appellants assume, however, that if one of several statutory procedures for collecting delinquent possessory interest taxes on reservation land may be invalid under federal law, then the tax itself is invalid. We know of no reason why this should be, and appellants suggest none.

Further, the Secretary of the Interior and the tribe retain their federal statutory rights to prevent a taxing authority's attempt to foreclose on reservation land or interests. The powers conferred by 25 U.S.C. §§ 415 and 476 make it virtually impossible that these collection procedures would infringe the rights of reservation Indians.[7] As the Ninth Circuit noted in *Fort Mojave,* provisions of federal law requiring Secretarial and tribal approval of reservation leases effectively preclude tax sales contrary to the wishes of the tribe and the Secretary. 543 F.2d at 1259.

Moreover, Arizona law grants the taxing authority an alternative remedy. A.R.S. section 42–616(A) declares an unsecured personal property tax to be a debt of the owner and his successors in interest; it enables the county treasurer or sheriff to realize the tax out of any of the owner's personal property

---

7. In *Fort Mojave,* the Ninth Circuit noted that none of the state collection procedures had been completed. 543 F.2d at 1259. The record here

does not reveal that the County or DOR commenced any of the collection procedures feared by appellants.

and to recover a personal judgment against him or his successors in interest for the unpaid taxes and costs. Given this procedure, the possible infirmity of the collection and lien foreclosure procedures is not material to the validity of the possessory interest tax itself.

Appellants contrast this case with *Cotton Petroleum* and argue that it represents the greatest extent to which the Supreme Court has gone to sustain a state tax against a claim of interference with tribal sovereignty. 490 U.S. at 163, 109 S.Ct. at 1700–01. They urge that the reasons DOR offers to validate former A.R.S. section 42–682 fall far short of those that guided the ruling in *Cotton Petroleum*. Again we cannot agree.

In *Cotton Petroleum*, the Court held that federal law did not preempt application of New Mexico's oil and gas severance taxes to non-Indians who extracted oil and gas from reservation real property pursuant to tribal mineral leases. 490 U.S. at 177, 109 S.Ct. at 1708. It distinguished *Ramah* and *White Mountain Apache Tribe* because in neither case had the taxing authority provided a regulatory function or service to justify a tax on the non-Indian taxpayers' on-reservation activities. *Cotton Petroleum*, 490 U.S. at 185–86, 109 S.Ct. at 1712–13. In both *Ramah* and *White Mountain Apache Tribe*, the federal government had imposed comprehensive regulatory schemes, and the economic burden of the taxes ultimately fell on the tribes. *Id.* at 184–85, 109 S.Ct. at 1711–12. On the other hand, in *Cotton Petroleum*, New Mexico provided substantial services to the taxpayer and the tribe; regulated the spacing and mechanical integrity of the wells; federal and tribal regulation of oil and gas leasing was extensive but not exclusive; and the economic burden of the severance tax did not fall on the tribe.

This case is more like *Cotton Petroleum* than appellants concede. Federal law regulates the leasing of Indian lands, but the regulatory scheme is not so pervasive that it cannot coexist with state taxation of possessory interests in leased lands. Further, the economic burden of the tax fell on the taxpayers, not the tribe. Under the sublease, the taxpayers must hold harmless the leased premises and improvements, the Development Corp., the tribe, and the Secretary of the Interior "from any and all claims, taxes, assessments . . . , and from any lien or sale or other proceedings to enforce payment thereof."

Finally, the record contains considerable evidence that Arizona provides on-reservation services to the tribe and these taxpayers. The state or county maintain the major access roads to the Industrial Park and surrounding areas. The state provides significant financial aid to schools attended by Indian children on and off the reservation and law enforcement services to non-Indians on the reservation, such as the taxpayers. Both taxpayers employ non-Indians who enjoy all of the benefits of state and local governments; they both rely on off-reservation suppliers and customers, who similarly benefit from state and local governments. *Cf. Dillon*, 170 Ariz. 560, 826 P.2d 1186 (state's interest in raising revenue is strongest when tax taps value generated off-reservation and taxpayer receives state services).

Appellants fail to demonstrate that imposition of the former possessory interest tax on the taxpayers' leasehold interests interfered in any degree with the tribe or its members' exercise of the right to self-government.

## C. Enforcement of Tax as Violation of Taxpayers' Right to Equal Protection

■ Appellants contend that the County's enforcement of the possessory interest tax against the taxpayers and not others was arbitrary and unconstitutional. They base this contention solely on the affidavit of Zuzette Kisto, a legal assistant employed in the Gila River Indian Community's general counsel's office. Kisto averred that on April 11, 1995, she spoke by telephone to certain named persons in either the assessor's or treasurer's offices of six of Arizona's counties other than Maricopa who said that those counties "were not attempting to assess and collect possessory interest taxes against leasehold interests in Tribal Trust Lands within their respective counties."

The legislature repealed the possessory interest taxing statutes effective January 1,

1995, 1995 Ariz. Sess. Laws Ch. 294, § 8, but the enactment was not filed with the Secretary of State Office until April 25, 1995. Nevertheless, information about the repeal would almost certainly have been known by county taxing officials well before that date. Kisto's information about the practices of six counties does not mean that these or other counties had refrained from taxing possessory interests during 1993 and 1994.

■ Additionally, to establish unreasonable discrimination in the administration of tax laws, the taxpayers must prove that the taxing authority intentionally or arbitrarily treated similarly situated persons unequally. *Hibbs v. Calcot, Ltd.*, 166 Ariz. 210, 218, 801 P.2d 445, 453 (App.1990); *Scottsdale Princess Partnership*, 185 Ariz. at 376, 916 P.2d at 1092. The record contains no evidence that Maricopa County intended to or did treat other holders of taxable possessory interests any differently from these taxpayers.

The tax court did not err in rejecting appellants' claim that the assessments violated the taxpayers' equal protection rights.

### 1. Failure to Order Partial Refund of 1993 Possessory Interest Taxes

■ In 1994, rather than attempting to exempt possessory interests from taxation, the legislature reclassified, retroactive to January 1, 1993, possessory interests as class twelve property assessable at one percent of full cash value. 1994 Ariz. Sess. Laws Ch. 293, § 8 (all possessory interests exempt under pre-amendment law were to be assessed for 1993 as class twelve property). *See* A.R.S. §§ 42–162(A)(12) and 42–227(A)(12), as amended by 1994 Ariz. Sess. Laws Ch. 293, §§ 1, 3, 8. For 1993, however, the County had already classified the taxpayers' possessory interests as class three (commercial) property assessable at twenty-five percent of full cash value and taxed them accordingly.

After the 1994 amendments became effective, the taxpayers sought refunds of the difference between the taxes paid at the twenty-five percent rate and those they would have paid at the one percent rate, which was equivalent to ninety-six percent of their 1993 possessory interest taxes. The County refused to refund any money, and the tax court upheld the denial of the refund requests.

Although DOR does not contest the refunds, the County argues that the retroactive provision was an unconstitutional gift of public funds in violation of Ariz. Const. art. 9, section 7 (the Gift Clause),[8] and thus that the taxpayers cannot receive a refund for tax year 1993. We recently considered an attack on the validity of retroactive tax legislation under the Gift Clause in *Maricopa County v. State of Arizona (Sherwood)*, 928 P.2d 699 (App.1996). After some individuals had used their property for agricultural purposes but had failed to take the necessary steps to receive an agricultural classification and valuation, the legislature adopted HB 2007, an uncodified enactment that allowed those persons to obtain agricultural treatment and a refund by filing a certification of agricultural use. *Id.* at 701–02. Maricopa County challenged the enactment as violative of the Gift Clause. *Id.*

■ We noted that the Gift Clause's purpose was to bar governmental bodies from giving special advantages or increasing the public debt by engaging in non-public enterprises. *Kromko v. Arizona Bd. of Regents*, 149 Ariz. 319, 320–21, 718 P.2d 478, 479–80 (1986); *Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 349, 687 P.2d 354, 357 (1984); *Arizona Ctr. for Law in Public Interest v. Hassell*, 172 Ariz. 356, 367, 837 P.2d 158, 169 (App.1991). A use of public money or property, for a public purpose, when the value of the public money or property is not disproportionately greater than the public benefit received, does not contravene the Gift Clause. *Wistuber*, 141 Ariz. at 349, 687 P.2d at 357. Even if particular persons or organizations benefit, this does not change the result. *See Industrial Dev.*

---

8. Ariz. Const. art. 9, § 7 provides:

Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or

make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation. . . .

*Auth. of Pinal County v. Nelson,* 109 Ariz. 368, 373, 509 P.2d 705, 710 (1973).

In *Sherwood,* we found that HB 2007 furthered the agricultural assessment statute's valid public purpose in protecting farmland from urban encroachment. 928 P.2d at 704–05. We also found that the county failed to meet its burden of proof in demonstrating that the exchange of tax money for the public benefit was disproportionate. *Id.*

The taxpayers asserted in the tax court that the reclassification statute was intended to encourage commercial development of reservation property and promote Indian self-sufficiency and economic welfare. The County argues, however, that the reclassification does not actually further those purposes or benefit the public, and thus that it fails the proportionality test.

We agree with the taxpayers. From the initial adoption of the possessory interest taxing statutes in 1985 through their repeal in 1995, the legislature has consistently sought either to exempt possessory interests in Indian lands from ad valorem taxation or to minimize the financial impact of such a tax. These attempts reflect a desire to prevent the possessory interest tax from deterring non-Indian commercial development on Indian lands and a desire to further the public benefit of an expanded employment base available to all Arizonans, Indians and non-Indians alike.

The reclassification enactment was simply a logical extension of the original legislative purposes. It also might have stemmed from concern for those who had relied on the favorable ad valorem tax treatment and had invested in commercial enterprises on reservations; if they then discovered that the state had retreated from its purpose of encouraging development, future business investment on the reservations might shrink. In light of the tax court's repeated rulings invalidating a total exemption from possessory interest taxes to reservation leaseholds, the legislature reasonably could have determined to sharply reduce the financial impact

of the taxes both to support its reservation investment policy and to reassure those who had already acted in reliance on it.[9] Like HB 2007, the reclassification furthered a policy that underlay the legislature's prior statutory attempts at total exemption. *Id.*

The County relies heavily on the tax court's opinion in *Sherwood,* which we vacated. 928 P.2d 699 (App.1996). The County argues that the reclassification statute only affects taxpayers who already have leases with Indian tribes and need no further encouragement to invest on the reservation. It challenges the asserted public purposes of Indian self-sufficiency and economic development and contends that no rationale "link[s] *retroactive* refunding to private, non-Indian enterprises, with *tribal* self-sufficiency and economic welfare." Because nothing requires that the refunded money be spent on a public purpose, the County claims that the refund would be a gift of public funds to private entities voiding the retroactive reclassification statute.

The pertinent question is whether the refund would disproportionately outweigh the public benefit from the statute. This is a question of fact, and as the challenger of the statute, the County bears the burden of demonstrating disproportionality. *Wistuber,* 141 Ariz. at 350, 687 P.2d at 358. As in *Sherwood,* the County here failed to support its allegations and did not meet its burden of proof. *See* 928 P.2d at 705–06.

*Higgins' Estate v. Hubbs,* 31 Ariz. 252, 252 P. 515 (1926), does not aid the County. Although the court remarked that it would be "absurd to suppose any sane legislature intended to give away public money with no legal or moral consideration whatever," 31 Ariz. at 261, 252 P. at 518–19, the Gift Clause was not at issue. Similarly, we decline to follow the California decisions in *Doctors General Hospital of San Jose v. Santa Clara County,* 150 Cal.App.2d 53, 309 P.2d 501 (1957), and *In re Stanford's Estate,* 126 Cal. 112, 58 P. 462 (1899).

---

9. *See also Fund Manager v. Corbin,* 161 Ariz. 364, 365, 778 P.2d 1260, 1261 (1989) (legislature may supply any authority retroactively that it could have provided prospectively); *Fairfield v. Hunt-*

*ington,* 23 Ariz. 528, 533–34, 205 P. 814, 816 (1922) (satisfying a moral or equitable claim that is legally unenforceable does not constitute making a donation).

The tax court, therefore, erred in denying refunds to the taxpayers based on the statutory reclassification of their possessory interests in the Industrial Park as class twelve property for 1993.

## IV. CONCLUSION

We affirm the tax court judgment that the leasehold interest constituted a taxable possessory interest, that the possessory tax was validly applied, and that no equal protection violation occurred. We reverse the denial of refunds based on the reclassification statute, however, and remand this matter for further proceedings consistent with this opinion.

GARBARINO, P.J., and GERBER, J., concur.